STATE of Missouri, Respondent,

v.

Daniel M. PRIMM, Appellant.

No. SC 91427.

Supreme Court of Missouri,
En Banc.

June 28, 2011.

As Modified on Denial of Rehearing
Aug. 30, 2011.

Jessica Hathaway, Public Defender's Office, St. Louis, MO, for Appellant.

John W. Grantham, Attorney General's Office, Jefferson City, MO, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

## I. Introduction

Appellant Daniel M. Primm appeals his conviction on ten counts of sexual abuse involving his grandniece, T.B. Evidence of uncharged crimes was properly admitted under an exception allowing for evidence of motive and to provide a coherent picture of the events that transpired, and there was sufficient evidence of penetration to support each count of statutory rape. While the judgment is affirmed in all other respects, the cause is remanded for the entry of a *nunc pro tunc* order correcting the written judgment.

## II. Facts and Procedural History

Appellant was charged in the Circuit Court of St. Louis City on multiple counts of sexual offenses against his grandnieces, T.B. and R.C. T.B. was 14 years old at the time of the abuse, and R.C. was 15 years old. According to their testimony, the Appellant committed sexual acts against the girls at various locations in St. Louis City and St. Louis County.

At trial, T.B. testified about four separate incidents of sexual abuse by her great uncle that occurred in the city of St. Louis. The first incident occurred at what T.B. referred to as "the fruit company." It is a parking lot with two warehouses on either side, commonly referred to as St. Louis Produce Row. T.B. testified as follows regarding this particular incident:

Q: How did you end up near the fruit company with your uncle?

A: Because he was supposed to be taking me to my house, but he had went to the fruit company. Then he was like let's stop here first. Then that was when he went to see if anybody was looking and he parked his car.

Q: So he parked his car in front of the fruit company?

A: Uh-huh.

Q: And what car was he driving that day?

A: His moving truck.

. . .

Q: And what happened after he parked his car at the parking lot of the fruit company?

A: He goes to the back and then told me to pull my pants down. Then he pulled his down.

. . .

Q: And then what happened?

A: And then that's when he got on top of me and he started like touching my breasts and all that.

Q: And was he touching your breasts with his hands or—

A: Mouth.

. . .

Q: And after he touched your breasts with his mouth, what happened?

A: Then that's—he told me to touch his penis.

. . .

Q: What happened after that?

A: Then that's when he started doing it then. He had—that's when he started doing like kissing me and stuff, and then after that he told me to pull my pants back up and then he—I got back in the front and he took me to my house.

Appellant abused T.B. a second time in the same parking lot at Produce Row, this time in his SUV. According to her testimony, he again told her to pull down her pants and then penetrated T.B.'s vagina with his finger and penis, touched her breasts, and instructed her to touch his penis.

Appellant also abused T.B. at her home in the city of St. Louis on two separate occasions when her mother was gone. The first time the acts occurred in T.B.'s bedroom. Specifically, T.B. testified that Appellant came into her bedroom and said "do you want to do it" and then told her to pull down her pants. While T.B. lay on her bed Appellant lubricated his penis with Vaseline and then inserted his penis into her vagina. She testified that he also put his finger in her vagina.

On another occasion, Appellant sexually abused T.B. on the dining room floor of her home. T.B. testified that the two of them were alone in the house and that he said "let's do it," had her lay down on the carpet, and got "some Vaseline, put it on his penis and then he had put his penis in my vagina."

Appellant's other grandniece, R.C., then testified about two incidents in which Appellant sexually abused her in the city of St. Louis. On one occasion he took her to a hotel on Grand Avenue in St. Louis, where he got a room. According to R.C., in the hotel room Appellant took nude pictures of her and then performed oral sex on her while masturbating. R.C. also testified to a time when she and Appellant where alone at T.B.'s home and he laid her down on the couch, told her she owed him a favor, told her to take off her pants, and performed oral sex on her and had sexual intercourse with her.

Appellant was only charged with the acts that occurred within the city limits (at Produce Row, at T.B.'s house, and at the hotel on Grand). However, T.B. and R.C. also testified about sexually abusive acts that occurred at Appellant's house in St.

Louis County. Specifically, T.B. testified that the first time Appellant abused her they were alone at his house, and he pulled down her pants, pulled down his own pants, and then "got on top" of her. She also mentioned that there were two other times when Appellant committed sexual acts with her at his home. R.C. also testified about two occasions when Appellant sexually abused her at his home. On one occasion she stated Appellant took her into one of the bedrooms and performed oral sex on her and then had sexual intercourse with her. On another occasion when R.C. was with Appellant in his basement, Appellant asked her if he could "do the same thing that he did before," but after she explained that she was menstruating he asked if he could just touch her butt instead.

Both girls also testified that, around the time the abuse began, Appellant commented to them, separately, that they were "getting thick." Their testimony further revealed that after these abusive acts took place, Appellant would give the girls gifts. T.B. testified that Appellant would sometimes give her money after performing these sex acts with her and would instruct her not to tell her mother. R.C. similarly testified that he would give her some money after they had sex, and on one occasion he gave her a bag of marijuana.

Pretrial, the defense moved to exclude testimony about uncharged sex offenses alleged to have taken place in St. Louis County as well as testimony that Appellant gave R.C. marijuana. The state opposed the motion, arguing that the evidence about uncharged allegations "goes to the common scheme or plan and the surrounding circumstances of everything" and dem-

onstrated that Appellant "would give the girls things after he abused them." The trial judge overruled the motion, ruling "I will not bar the State ... from presenting testimony of the entire coherent scheme, even if it slops over into certain events that may have occurred in another jurisdiction."

Appellant was charged with 13 separate counts for the acts testified to that occurred within the city limits of St. Louis.[1] He was charged with second-degree statutory rape (Count I), second-degree statutory sodomy (Count II), and second-degree child molestation (Count III) for his actions against T.B. in the moving van while parked at Produce Row; second-degree statutory rape (Count IV) and second-degree statutory sodomy (Count V) for his actions against T.B. in her bedroom at her home; second-degree statutory rape (Count VI) and second-degree child molestation (Count VII) for his actions against T.B. on the dining room floor of her home; and second-degree statutory rape (Count VIII), second-degree statutory sodomy (Count IV), and second-degree child molestation (Count X) for his actions against T.B. in his SUV while parked at Produce Row. The State also charged Appellant with three separate counts for his actions against R.C., including second-degree statutory sodomy (Count XI) for his actions in the hotel room, as well as second-degree statutory rape (Count XII) and second-degree statutory sodomy (Count XIII) for his actions against R.C. on the couch at T.B.'s home.

After trial, a jury convicted Appellant of all four counts of second-degree statutory rape, all three counts of second-degree statutory sodomy, and all three counts of

---

1. The State entered a notice of nolle prosequi on four additional counts originally charged. One was dropped before trial, and the other three were dropped at the close of the State's case.

misdemeanor second-degree child molestation, relating to the acts Appellant committed against T.B. Appellant was acquitted on the three charges relating to his alleged abuse of R.C. The trial court sentenced Appellant to serve concurrent prison terms of 15 years for each of the statutory rape counts; one year terms for each count of child molestation, to be served concurrently with the rape sentences; and five-year terms for each sodomy count, to be served concurrently with each other and consecutive with the sentences for the rape and molestation counts, for a total of 20 years in prison. Appellant raises two points on appeal.

## III. Analysis

### A. *Admissibility of Evidence of Uncharged Crimes*

Appellant first claims the trial court abused its discretion by admitting, over objection, evidence that Appellant had committed uncharged sex crimes against T.B. and R.C. in St. Louis County and that Appellant gave R.C. marijuana.

■ The standard of review for the admission of evidence is abuse of discretion. *State v. Reed,* 282 S.W.3d 835, 837 (Mo. banc 2009). "This standard gives the trial court broad leeway in choosing to admit evidence; therefore, an exercise of this discretion will not be disturbed unless it is clearly against the logic of the circumstances." *Id.*

■ It is a well-established general rule that "proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial." *State v. Vorhees,* 248 S.W.3d 585, 587 (Mo. banc 2008). The rationale for the general rule of exclusion is to prevent such evidence from being admitted for the purpose

of demonstrating the defendant's propensity to commit the crime with which he is presently charged. *State v. Ellison,* 239 S.W.3d 603, 606 (Mo. banc 2007). However, there are several exceptions under which otherwise inadmissible evidence may be admitted. Such evidence may be admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with commission of the crime on trial. *Vorhees,* 248 S.W.3d at 588. In addition, evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged may be admissible "to present a complete and coherent picture of the events that transpired." *State v. Thurman,* 272 S.W.3d 489, 495 (Mo.App.2008) (quoting *State v. Harris,* 870 S.W.2d 798, 810 (Mo. banc 1994)).

### 1. *Evidence of uncharged sexual acts with T.B.*

■ Appellant specifically claims as error the admission of T.B.'s testimony about the first time that Appellant touched her inappropriately, which occurred at Appellant's house in St. Louis County. Although Appellant was not charged with any crimes relating to this particular incident, T.B. testified that Appellant pulled down her pants and then pulled down his pants and got on top of her.

■ Numerous cases in Missouri involving sexual crimes against a child have held that "prior sexual conduct by a defendant toward the victim is admissible as it tends to establish a motive, that is satisfaction of defendant's sexual desire for the victim." *Thurman,* 272 S.W.3d at 495. *See also State v. Schaal,* 806 S.W.2d 659, 664 (Mo.

banc 1991); *State v. Graham*, 641 S.W.2d 102, 105 (Mo. banc 1982); *State v. Bascue*, 485 S.W.2d 35, 37 (Mo.1972); *State v. Magouirk*, 890 S.W.2d 17, 17 (Mo.App.1994); and *State v. Douglas*, 797 S.W.2d 532, 533 (Mo.App.1990). The evidence of uncharged sexual abuse against T.B. that occurred in St. Louis County was properly admitted.

### 2. Evidence of uncharged sexual acts with R.C.

■ Appellant similarly claims the trial court erred in allowing R.C. to testify about sexual acts committed against her by Appellant at his home in the county, for which Appellant was not charged. R.C. testified that Appellant took her to a bedroom in his home and performed oral sex on her and then had sexual intercourse with her. R.C. also testified about a time when she was with Appellant in his basement and Appellant said he wanted to have sex with her. When R.C. told him she was menstruating, he asked if he could touch her butt instead.

The exception for same child victim testimony also applies to this evidence. *See State v. Graham*, 641 S.W.2d at 105. While some of the uncharged acts R.C. testified to occurred shortly after the acts for which Appellant was charged, the same rationale applies, as additional sexual misconduct with the victim is probative of Appellant's sexual desire for that individual and, thus, tends to establish a motive for the sexual offenses charged.

### 3. Evidence that Appellant gave R.C. marijuana

■ Appellant further contends the evidence that he gave R.C. marijuana was inadmissible as evidence of an uncharged crime. However, evidence of uncharged crimes may be admissible to provide the trier-of-fact with a "complete and coherent picture of the events that transpired." *State v. Harris*, 870 S.W.2d at 810. Evidence that Appellant gave R.C. marijuana was introduced to show that Appellant would give R.C. gifts after committing sexual acts against her in order to dissuade her from disclosing the abuse. Because this evidence was used to explain why T.B. and R.C. did not immediately report the sexual misconduct to the authorities, it was admissible to show the circumstances surrounding the offenses charged and to provide a more complete picture of the crimes. The trial court did not abuse its discretion in admitting this evidence.

### B. Sufficiency of Evidence on Count I

■ Appellant next contests the sufficiency of the evidence to support his conviction for Count I, charging him with the second-degree statutory rape of T.B. in violation of section 566.034,[2] which provides:

> A person commits the crime of statutory rape in the second degree if being twenty-one years of age or older, he has sexual intercourse with another person who is less than seventeen years of age.

Count I (along with Counts II and III) related to acts that occurred in Appellant's moving truck. Appellant does not dispute that the State presented sufficient evidence of sexual contact with T.B. in the moving truck to support his convictions for Count II (second-degree statutory sodomy) and Count III (second-degree child molestation). Appellant also does not dispute that he was over the age of 21 and that T.B. was under the age of 17 at the time these events occurred. Appellant contests only the sufficiency of the evi-

---

**2.** All statutory references are to RSMo 2000 unless otherwise indicated.

dence to prove that he had sexual intercourse with T.B. in the moving truck.

When the sufficiency of the evidence is challenged in a criminal case, this Court's review is limited to whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Pike*, 162 S.W.3d 464, 473 (Mo. banc 2005). The evidence is viewed in the light most favorable to the verdict, considering all favorable inferences and disregarding all contrary inferences. *Id.*

■ "Sexual intercourse" is defined as "any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results." § 566.010(4). However, sexual intercourse may be proven by the uncorroborated testimony of the victim, and slight proof of penetration is sufficient. *State v. Hill*, 808 S.W.2d 882, 890 (Mo.App.1991).

Appellant contends the State failed to present evidence of penetration constituting sexual intercourse in the moving truck, as charged in Count I. According to Appellant, T.B.'s testimony regarding the incident in the moving truck did not specify that there was penetration of her vagina by Appellant's penis, as necessary to meet the sexual intercourse element of second-degree statutory rape. Her testimony described the following acts by Appellant in his moving truck while parked at Produce Row:

Q: So he parked his car in front of the fruit company?

A: Uh-huh.

Q: And what car was he driving that day?

A: His moving truck.

. . .

Q: And what happened after he parked his car at the parking lot of the fruit company?

A: He goes to the back and then told me to pull my pants down. Then he pulled his down.

. . .

Q: And then what happened?

A: And then that's when he got on top of me and he started like touching my breasts and all that.

Q: And was he touching your breasts with his hands or—

A: Mouth.

. . .

Q: And after he touched your breasts with his mouth, what happened?

A: Then that's—he told me to touch his penis.

. . .

Q: What happened after that?

A: Then that's when he started doing it then. He had—that's when he started doing like kissing me and stuff, and then after that he told me to pull my pants back up and then he—I got back in the front and he took me to my house.

The State counters that when T.B. testified that "he started doing it" she was referring to sexual intercourse. First, as the State points out, "doing it" is a commonly used slang for sexual intercourse. *See* MARK ROGET AND JOHN BARTLETT, BARTLETT'S ROGET'S THESAURUS (1st ed.1996). Second, T.B.'s testimony revealed that Appellant himself would refer to sexual intercourse in those same terms. For example, T.B. testified that when she and Appellant were alone in her bedroom he said "you want to do it," told her to pull her pants down, and then he lubricated his penis and "put it in my vagina." She similarly testified that when she was subsequently alone in her home with Appellant he said "let's do it" and then lubricated his penis and "put his penis in my vagina" while she lay on the dining room floor. In each of these

instances it appears clear that T.B. referred to sexual intercourse as "doing it."

"There is no magic word necessary to describe penetration." *State v. Elmore,* 723 S.W.2d 418, 420 (Mo.App.1986). The victim's testimony, viewed as a whole, supports the inference that when T.B. used the term "doing it," she was referring to sexual intercourse. There was sufficient evidence, taken together with the reasonable inferences therefrom, to prove that Appellant had sexual intercourse with T.B. in the moving truck.

## C. *Error in Trial Court's Written Judgment on Count X*

Appellant asserts that the trial court plainly erred in entering a written judgment that differed from its oral pronouncement. The trial court orally pronounced that:

> "Courts [I], [III], [IV], [VII], [VIII] and [X] will run concurrent with each other. Counts [II], [V], and [IX] will run concurrent with each other, but will run consecutive to the other counts."

The written judgment, however, stated that Count X shall run consecutive to counts I, III, IV, VI, VII, VIII, and X. The State concedes this inconsistency and that the written judgment should be corrected with a *nunc pro tunc* order, pursuant to Rule 29.12(c).[3]

### IV. Conclusion

While the judgment is affirmed in all other respects, the cause is remanded to the trial court for the entry of a *nunc pro tunc* order correcting the written judgment.

---

3. **Rule 29.12. MISDEMEANORS OR FELONIES—HARMLESS ERROR, PLAIN ERROR AND CLERICAL MISTAKES**
   . . .
   **(c) Clerical Mistakes.** Clerical mistakes in judgments, orders or other parts of the record

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE, FISCHER and STITH, JJ., concur.

and errors in the record arising from oversight or omission may be corrected by the court at any time after such notice, if any, as the court orders.