**STATE of Missouri, Respondent,**

v.

**Cindy Irene YOUNG, Appellant.**

**No. ED 96571.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 5, 2012.

---

Emmett D. Queener, Assistant Public Defender, Columbia, MO, for appellant.

Jessica P. Meredith, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Cindy Irene Young (Defendant) appeals from a judgment entered in the Ralls County Circuit Court following her conviction for identity theft. Defendant contends that the trial court abused its discretion by admitting evidence of uncharged crimes. We affirm.

### Background

Defendant and Daniel Webster met in June 2005. They began dating and lived together off-and-on. In the spring of 2006, Defendant opened a restaurant in New London. Webster helped her open the restaurant by cooking, cleaning, and assisting with "odds and ends." Webster was not, however, a paid employee. Webster also purchased some equipment for the restaurant, but the purchase was a loan rather than a gift. Webster and Defendant fought often, and eventually he "just broke everything off and stayed away."

In June 2006, while he and Defendant were "broken up," Webster attended an alcohol awareness class in Hannibal. Defendant knew that Webster would be gone for three days. When Webster returned from Hannibal, he entered his house and noticed that the bedding had been removed. Webster found that there was a large dent in the gas tank of his motorcycle and there were several items missing from his motorcycle trailer. Webster also found stickers on various objects in the house and the garage. One sticker read: "Paybacks are a motherfucker." Another stated: "I don't get mad, I get even!" A third one declared: "Jesus may love you but I think you're an asshole." A fourth sticker proclaimed: "It must suck to be you!" Webster also noticed that a tote box in which he kept his personal papers, including "insurance, titles, birth certificates, [and] bills," was missing.

In December 2006, Webster received a letter from Bank of America stating that a company by the name of Western Surety was checking his credit. Webster subsequently received another letter stating that a company by the name of Pawnee

Leasing was also checking his credit. Webster began to do his own investigation. Webster contacted Western Surety, who informed him that the transaction in question was in regards to "a bond so somebody could get utilities." Webster, however, had never been involved in such a transaction. Nor had Webster ever engaged in any transaction with Pawnee Leasing. Webster requested a copy of his own credit report, which revealed that he owed $42,425 on a line of credit from Time Payment Corporation. Webster spoke with Michelle Cook at Time Payment Corporation and informed her that he had not opened the line of credit and believed that his identity had been stolen. Webster also filed a criminal report of identity theft with the Marion County Sheriff's Office.

After an investigation, the State charged Defendant with one count of identity theft. Prior to trial, Defendant filed a motion in limine seeking to prohibit the State from referring to any uncharged crimes of Defendant during "voir dire, opening statement, evidence or argument." At the pre-trial hearing on the motion, defense counsel clarified that the motion in limine referred to Webster's allegation, made during a pre-trial deposition, that Defendant had unlawfully entered his residence, stolen items, and damaged his property. Without specifically granting or denying the motion, the trial court ruled that it would "let [the prosecution] get into it to an extent," but that it would not let the issue "become[ ] a central issue or overshadow[ ] what we're here for."

At trial, Webster testified that he believed that Defendant entered his house during the three days that he was in Hannibal, placed several stickers on objects in the house and the garage, and stole several personal papers from him, including vehicle titles. The State introduced copies of the vehicle titles and a copy of the stickers into evidence. Defense counsel objected to Webster's testimony regarding the alleged unlawful entry and the admission of the copies of the vehicle titles into evidence. The trial court overruled both objections.

Additional evidence adduced at trial revealed that Defendant had used Daniel Webster's name, social security number, birthdate, signature, and other personal information, without his permission, in order to secure, among other things, a $50,000 line of credit from Time Payment Corporation, a $6,000 surety bond to guarantee payment of her utility bills to the City of Palmyra, and COD ("[c]ash or check upon delivery") privileges from Kohl's Wholesale.

At the conclusion of all the evidence, the jury convicted Defendant of identity theft and the trial court sentenced her to twenty years' imprisonment. This appeal followed.

### Standard of Review

"A trial court has broad discretion to admit or exclude evidence at trial." *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005). We will reverse the ruling of the trial court "only if the court has clearly abused its discretion." *Id.* at 355. "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Thompson*, 341 S.W.3d 723, 731 (Mo.App. E.D.2011). We review all the evidence in the light most favorable to the jury's verdict. *State v. Moyers*, 266 S.W.3d 272, 275 (Mo.App.W.D.2008).

### Discussion

In each of her three points on appeal, Defendant challenges the trial court's admission of evidence relating to Webster's allegation that Defendant entered his home without his permission, stole his personal papers, and placed stickers on

various items in the house and garage. More specifically, Defendant's first point claims that the trial court erred by admitting Webster's testimony that he believed Defendant had entered his house without permission; Defendant's second point asserts that the trial court erred in admitting State's Exhibit 23, copies of the vehicle titles allegedly stolen from Webster's residence during the unauthorized entry; and Defendant's third point contends that the trial court erred in admitting State's Exhibit 24, a copy of the stickers Webster found in his house after Defendant had allegedly entered it. In all three of these points, Defendant asserts that the trial court abused its discretion by admitting evidence at trial pertaining to uncharged crimes.

In general, evidence of uncharged crimes is not admissible for the purpose of showing the defendant's criminal character or propensity to commit such crimes. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). However, an exception to this general rule exists where the evidence of the uncharged crime is both logically and legally relevant. *Id.* Such evidence is logically relevant if it has "some legitimate tendency to establish directly the accused's guilt of the charges for which [she] is on trial," and such evidence is legally relevant if "its probative value outweighs its prejudicial effect." *Id.*

Evidence of uncharged crimes has a "legitimate tendency to prove the specific crime charged" when the prosecution uses it to establish: "(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; [or] (5) the identity of the person charged with the commission of the crime on trial." *State v.*

*Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993) (*quoting State v. Sladek,* 835 S.W.2d 308, 311 (Mo. banc 1992) (internal quotation marks omitted)). These exceptions, however, are not exhaustive, and uncharged crimes evidence may be admitted even if it does not fall within an enumerated exception so long as it is both logically and legally relevant. *Bernard,* 849 S.W.2d at 13. For example, evidence of uncharged crimes may be admitted " 'to present a complete and coherent picture of the events that transpired.' " *State v. Primm,* 347 S.W.3d 66, 70 (Mo. banc 2011) (*quoting State v. Thurman,* 272 S.W.3d 489, 495 (Mo.App. E.D.2008)).

To convict Defendant of identity theft, the State was required to prove that Defendant "knowingly and with the intent to deceive or defraud obtain[ed], possesse[d], transfer[red], use[d], or attempt[ed] to obtain, transfer or use, one or more means of identification not lawfully issued for his or her use." Mo.Rev.Stat. § 570.223.1.[1] Section 570.223.2 provides a nonexclusive list of "means of identification" that includes, among other things: social security numbers, birth certificates, and "any other numbers or information that can be used to access a person's financial resources." Mo.Rev.Stat. § 570.223.2.

In response to Defendant's first point, the State contends that the trial court did not err in admitting Webster's testimony regarding the unlawful entry because the evidence was both logically and legally relevant. The State contends that the evidence was logically relevant because: (1) it demonstrated that Defendant had the opportunity to steal Webster's identity; and (2) "it helped to present a complete and coherent picture of Defendant's acts." We agree with the State that Webster's testimony regarding the unlawful entry created a complete and coherent·picture of Defen-

---

1. All statutory references are to Mo.Rev.Stat. (2000), as supplemented.

dant's actions in committing the crime charged. Webster testified that he believed Defendant entered his home while he was away and stole the tote box in which he stored his personal papers, including his vehicle titles and birth certificate. Webster also testified that some of these personal papers had information on them such as his birthdate and social security number. This evidence had a legitimate tendency to prove the specific crime charged in that it demonstrated how Defendant obtained the information necessary to steal Webster's identity.

Defendant argues that this evidence was not logically relevant because the alleged unlawful entry occurred in June 2006, two months after Defendant allegedly used Webster's name, signature, date of birth, and social security number on a "new customer application" with Kohl's Wholesale. However, the fact that Defendant may have already begun to use Defendant's identity at the time that she stole his personal papers does not negate the relevance of Defendant's unlawful entry and theft. The majority of Defendant's use of Webster's identity occurred after her unlawful entry into his home. Therefore, the alleged unlawful entry and theft of personal papers occurred *while* Defendant was in the process of stealing Webster's identity. Thus, Webster's testimony was admissible because it had the effect of presenting to the jury "a complete and coherent picture of the events that transpired." *Primm*, 347 S.W.3d at 70.

 Defendant further contends that Webster's testimony was not legally relevant because it was prejudicial but not probative. The weighing of the legal relevance of evidence is primarily a duty of the trial court. *See State v. Kenley*, 693 S.W.2d 79, 81 (Mo. banc 1985) ("The trial court is in the best position to evaluate whether the potential prejudice of relevant evidence outweighs the relevance.") We

will not overturn the trial court's determination absent an abuse of discretion. *Primm*, 347 S.W.3d at 70. Here, Webster's testimony was probative in that it demonstrated a complete and coherent picture of how Defendant committed the crime charged. Defendant argues that Webster's testimony was prejudicial because it allowed the jury to infer that she had a propensity to commit crimes and constituted "bad character" evidence. However, the State did not at any point attempt to use the evidence of the unlawful entry as propensity evidence, and we cannot say that the trial court abused its discretion in determining that the probative effect of the testimony outweighed any prejudicial effect it might have had on the jury's perception of Defendant's character. Point denied.

In response to Defendant's second point, the State contends that the trial court did not err in admitting copies of Webster's stolen vehicle titles into evidence because they demonstrated a complete and coherent picture "of how Defendant obtained [Webster's] personal information" and were not prejudicial. As explained above, we agree that evidence that Defendant entered Webster's house without permission and stole personal papers is probative of the crime of identity theft in that it presents a complete and coherent picture of how Defendant committed the crime charged. The admission into evidence of copies of some of those stolen papers-the vehicle titles-enhanced the jury's understanding of the circumstances. Furthermore, as with Defendant's first point, we cannot say that the trial court abused its discretion in determining that evidence related to Defendant's alleged unlawful entry into Webster's residence was more probative than prejudicial. Point denied.

 In her third point, Defendant contends that the trial court abused its discretion by admitting into evidence a copy of

the stickers placed in various locations in Webster's home. In addition to reasserting her argument about the timing of the unlawful entry, which we have already addressed, Defendant asserts that the stickers, in particular, were not logically relevant because they did not contain personal information pertaining to Webster.

 In response, the State contends that the stickers were logically relevant to the case because they presented a complete and coherent picture of Defendant's acts and demonstrated her motive for stealing Webster's identity. We agree. As the State correctly notes, Webster testified that Defendant had purchased the stickers at a motorcycle rally. Thus, the stickers were relevant to connect Defendant to the unlawful entry and demonstrate that she stole the tote box with Webster's personal papers. Furthermore, the stickers were logically relevant because they tended to establish Defendant's motive for stealing Webster's identity by showing that she felt animosity towards him. Evidence of motive is logically relevant and admissible even where motive is not an element of the crime charged. *State v. Williams*, 366 S.W.3d 609, 624 (Mo.App. W.D.2012).

We also agree with the State that the probative value of the stickers outweighed their potential for prejudice. Defendant contends that the stickers were prejudicial because they allowed the jury to infer her "propensity to commit crimes in general" and her "bad character." Defendant asserts that the stickers allowed the State to characterize her as "a vengeful and vindictive person." However, the State did not argue that Defendant was "vengeful and vindictive," but rather "angry." In any event, we agree with the State that Defendant's animosity towards Webster was probative of her motive for stealing Webster's identity. Therefore, we cannot say that the trial court abused its

discretion in finding that the stickers were more probative then prejudicial. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, C.J., and ROBERT M. CLAYTON III, J., concur.