ATTORNEY FOR APPELLANT: Christian Lehmberg, Public Defenders Office, 1000 West Nifong, Bldg. 7 Ste. 100, Columbia, MO 65203.
ATTORNEY FOR RESPONDENT: Joshua D. Hawley, Attorney General, Evan Joseph Buchheim, Assistant Attorney General, P.O. Box 899, Jefferson City, MO 65102.
Honorable Mary K. Hoff *185 Rickie Allen Reagan, Sr. ("Defendant") appeals from the Judgment upon his conviction following a jury trial for one count of unlawful possession of a firearm by a felon in violation of Section 571.070 RSMo 2000[1] . The trial court sentenced Defendant to five years of imprisonment. We affirm.
Factual and Procedural Background
We review all evidence and reasonable inferences drawn from the evidence in the light most favorable to the jury's verdict. State v. McCauley, 528 S.W.3d 421, 423 (Mo. App. E.D. 2017). On February 1, 2016 at about 8:50 p.m., several officers from the Washington County Sheriff's Department were dispatched to 10550 Creek Ridge Road in Mineral Point to respond to a disturbance. Officer Jeremy Stetina ("Officer Stetina") arrived first and encountered Defendant outside the residence standing by a white truck. As Defendant and Officer Stetina approached each other to speak, a woman later identified as Melissa Reagan ("Melissa")[2] -Defendant's wife-stepped outside the residence and told Officer Stetina, "I need to talk to you." Officer Stetina instructed Melissa to return inside until he was available to speak with her, and she did. At that point, officers Eddy Courville ("Officer Courville"), and Christopher Barton ("Officer Barton") arrived, and Officer Stetina asked them to speak with Melissa inside.
While Officer Courville and Officer Barton entered the residence, Officer Stetina began speaking with Defendant to gather information. Defendant explained that the disturbance began after he had a verbal argument with Melissa earlier in the day so that Melissa left the residence with a friend. As Defendant spoke, Officer Stetina noticed two bullet holes in the truck and one in the front door of the residence. When asked about them, Defendant explained that after Melissa left, he told his son, John Reagan ("John"), to retrieve "my gun"-a Hi Point 9 millimeter-and "had [John] shoot his truck," but gave no reasoning as to why he told John to do so. As for the door, Defendant explained that earlier in the day, he heard a sound outside, retrieved his firearm, and while searching for the source of the noise, accidentally discharged it so that a round struck the door.
Meanwhile, inside the residence, Officer Courville and Officer Barton found Melissa sitting in a chair in the living area. The officers noticed that Melissa was "kind of falling asleep ... [,] fidgety, distraught, nervous," and "appeared to be under the influence of a depressant." The officers observed the Hi Point 9 millimeter handgun on the chair with Melissa, and they seized it. When the officers spoke with Melissa, she accused Defendant of having the handgun and of shooting the door of the residence. She explained that she was outside the house when Defendant shot the *186 door and that she then "ran inside to try to get the gun." While inside, the officers found spent shell casings and a 9 millimeter round in the bedroom.
Officer Courville then walked outside and asked Officer Stetina to detain Defendant. Officer Stetina did so and secured Defendant in his patrol car. Soon thereafter, Officer Stetina read Defendant his Miranda [3] rights and transported him to the police department. Upon arrival, Officer Stetina began interviewing Defendant about the day's events. Defendant reiterated his prior explanations about the bullet holes in the truck and the door, and Defendant further admitted that earlier in the evening he had pointed the firearm, unloaded at the time, at Melissa and asked her to "swear on a bible that she wasn't doing anything outside of the home."
On June 1, 2016, Defendant was charged by information, subsequently amended on September 5, 2017, as a prior offender with unlawful possession of a firearm. The information alleged that on "February 1, 2016, ... [D]efendant knowingly possessed a Hi Point 9 [millimeter] handgun, a firearm, and on October 26, 2007, ... [D]efendant was convicted of the felony of driving while intoxicated."
A jury trial was held on September 5, 2017. The parties stipulated that Defendant had been convicted of felony driving while intoxicated in October 2007. At trial, Officer Stetina testified that Defendant admitted to instructing John to retrieve "my gun" and to shoot his truck, to accidentally discharging the firearm while searching for the source of a noise, and, over Defendant's objection, to pointing the unloaded firearm at Melissa while telling her to swear that she "wasn't doing anything outside of the home."
Defendant, in turn, presented evidence from his friend, John Vickers, who testified that he briefly visited Defendant on February 1, 2016 and saw no firearm while he was there. Additionally, Defendant's son John testified that Defendant never told him to shoot the truck; John explained that the bullet holes in the truck were the result of his missing a target while shooting at it for target practice.
During the instruction conference, the trial court asked whether Defendant had any objections to any of the instructions offered by the State, including Instruction 5, the verdict director. Instruction 5 read:
If you find and believe from the evidence beyond a reasonable doubt:
First, that on or about February 1, 2016, in the County of Washington, State of Missouri, the defendant possessed a Hi Point 9 [millimeter] handgun, a firearm, and
Second, that on October 26, 2007, the defendant was convicted of a felony in the Circuit Court of St. Francois County, Missouri, and
Third, that the defendant acted knowingly with respect to the facts and circumstances submitted in this instruction,
then you will find the defendant guilty of unlawful possession of a firearm.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
As used in this instruction, the term "firearm" means any weapon that is designed or adapted to expel a projectile by the action of an explosive.
As used in this instruction, the term "possessed" means having actual or constructive possession of an object with knowledge of its presence. A person has *187 actual possession if he has the object on his person or within easy reach and convenient control. A person has constructive possession if he has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons. Possession may also be sole or joint. If one person alone has possession of an objection, possession is sole. If two or more persons share possession of an object, possession is joint.
Instruction 8, in turn, explained that the jury's "verdict, whether guilty or not guilty, must be agreed to by each juror" and that the jury's "verdict must be unanimous." Defendant answered that he had no objection to any of the instructions.
During closing arguments, the State argued that by "his own admission," "there were various ways ... in which the [D]efendant possessed the firearm" on February 1, 2016. The State argued that Defendant had constructive possession of the firearm when he instructed John to shoot his truck, and had actual possession of it when he held it while searching for the source of a noise and while pointing it at Melissa. Defendant countered that the evidence failed to establish that he either actually or constructively possessed the firearm.
Following argument, the jury found Defendant guilty of unlawful possession of a firearm. On September 22, 2017, Defendant filed a motion for acquittal, or in the alternative for a new trial, arguing that the trial court erroneously admitted improper propensity evidence stemming from his pointing the firearm at Melissa. On November 20, 2017, the trial court denied Defendant's motion and sentenced Defendant to five years of imprisonment. Defendant's appeal follows.
Jury Instruction
In his first point, Defendant argues that the trial court plainly erred in submitting Instruction 5 to the jury because it violated his right to a unanimous jury verdict[4] in that it identified no particular act of possession upon which the jury was required to agree that Defendant committed to find him guilty of unlawful possession of a firearm. Defendant concedes that he failed to object to Instruction 5, and he requests that this point be reviewed for plain error.
"Any issue that was not preserved can only be reviewed for plain error, which requires a finding that manifest injustice or a miscarriage of justice has resulted from the trial court error." State v. Severe, 307 S.W.3d 640, 642 (Mo. banc 2010). For a defendant to show that an instructional error constitutes plain error, he must show that the trial court "so misdirected or failed to instruct the jury" that the error affected the jury's verdict. State v. Dorsey, 318 S.W.3d 648, 652 (Mo. banc 2010) (quoting State v. Salter, 250 S.W.3d 705, 713 (Mo. banc 2008) ).
The Missouri Constitution provides that "the right of trial by jury as heretofore enjoyed shall remain inviolate." Mo. Const. art. I, sec. 22(a). The Missouri Supreme Court has interpreted "as heretofore enjoyed" to mean protecting "all the substantial incidents and consequences that pertain to the right to jury trial at *188 common law," including a unanimous jury verdict. State v. White, 466 S.W.3d 682, 692 (Mo. App. E.D. 2015) (quoting State v. Hadley, 815 S.W.2d 422, 425 (Mo. banc 1991) ). To be unanimous, the jurors must be in substantial agreement regarding the defendant's acts as a preliminary step to determining guilt. State v. Celis-Garcia, 344 S.W.3d 150, 155 (Mo. banc 2011).
Defendant argues that Instruction 5 failed to ensure that the jury reached a unanimous verdict because it required only that the jury generally find that he unlawfully possessed a firearm on February 1, 2016 and did not require the jury to agree on a specific instance of such possession on that date to find him guilty. Defendant asserts that because the State presented evidence that he constructively or actually possessed the firearm by instructing John to shoot his truck, holding it when it accidentally discharged, and holding it while pointing it at Melissa, the jurors might have agreed that Defendant possessed a firearm, but might not have unanimously agreed as to which of the three instances constituted the basis for his conviction.
Defendant thus claims that this is a "multiple acts" case. "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." Id. at 155-56. In multiple acts cases, "[e]ach repeated offense is unconnected to the last and is not like a course of conduct in which multiple acts could not be distinguished." State v. Escobar, 523 S.W.3d 545, 549 n.3 (Mo. App. W.D. 2017). A trial court can protect a defendant's right to a unanimous jury verdict in a multiple acts case "by either (1) choosing one particular act to support the charge, or (2) specifically instructing the jury that they must unanimously agree that at least one of the multiple acts occurred." White, 466 S.W.3d at 692.
In asserting that this case involves multiple acts of Defendant's possession of the firearm, Defendant relies heavily upon Celis-Garcia. In Celis-Garcia, two victims alleged that the defendant and her boyfriend engaged in multiple acts of sexual abuse on several separate occasions and at different locations. 344 S.W.3d at 156. The jury instructions required the jury to find the defendant guilty if they concluded that "between [certain dates] ... the defendant or [her boyfriend] placed her or his hand on [the victim's] genitals[.]" Id. The defendant was convicted, and she appealed, arguing that her right to a unanimous verdict was violated because the verdict director "required only a general finding of hand-to-genital contact between the specified dates and did not require agreement ... on a specific incident of [such] contact." Id. at 155. The Court agreed, determining that because the victims alleged various acts at different times and locations, they were separate acts that could each serve as the basis for a criminal charge. Id. at 156. The Court concluded that since the defendant's case involved multiple acts, the instructions violated her right to a unanimous jury verdict because they did not mandate juror agreement on one particular act. Id.
Celis-Garcia is distinguishable here. Contrary to Defendant's assertion, this is not a multiple acts case, but rather, is a case concerning a proscribed course of conduct. "A person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and ... [s]uch person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony." Section 571.070.1(1). "Crimes of *189 possession are generally recognized in our criminal law as continuing offenses because '[t]he possession is a continuing offense, lasting as long as the act of possession does.' " State v. Wright, 484 S.W.3d 817, 820 (Mo. App. E.D. 2015) (quoting WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW Sec. 6.1(e), n. 46 (2d ed. 2003) ). "This is because possession [is] not terminated by a single act or circumstance but [is] committed as long as the proscribed conduct continues." Id. (internal quotes and citation omitted). As such, Missouri and federal courts have held that several crimes of possession are continuing course of conduct offenses. See ibr.US_Case_Law.Schema.Case_Body:v1">id. ("[P]ossession of child pornography is a continuing offense because it does not cease when the defendant acquires the pornography, but rather when the possession terminates."); State v. Robinson, 710 S.W.2d 14, 16 (Mo. App. W.D. 1986) ("possession of the knife ... is a continuing charge"); State v. Sampson, 408 S.W.2d 84, 89 (Mo. 1966) ("possession of the amphetamine was a continuing offense"); U.S. v. Fleischli, 305 F.3d 643, 658 (7th Cir. 2002) ("Possession of a firearm is a continuing offense which ceases only when the possession stops.") (superseded by statute on other grounds).
For example, in U.S. v. Jones, 403 F.3d 604, 606 (8th Cir. 2005), the defendant, a felon, was stopped for a traffic violation by two officers. Id. at 606. During the stop, the defendant informed the officers that he kept a firearm in the car. Id. One of the officers took the firearm to check its status, and after the check revealed that the firearm was not stolen, the officer returned it to the defendant. Id. The defendant was later charged and convicted with, inter alia , two counts of being a felon in possession of a firearm. Id. at 605. After an unsuccessful appeal, the defendant alleged that his counsel had been ineffective for failing to challenge the indictment as multiplicitous, claiming that his possession of the firearm was one uninterrupted act such that he could only have been charged with one count of possession. Id. at 606. The government argued that the defendant's possession had not been a continuous act because he lost and regained possession of the firearm when he handed it to the officers and had it returned to him soon thereafter. Id. The Court disagreed, finding that the crime of possessing a firearm criminalizes a course of conduct rather than individual acts of dominion so that the continuous possession of the same firearm constitutes a single offense. Id. The Court determined that the defendant's possession had never been interrupted because, while the defendant briefly lost actual possession of the firearm, he never relinquished constructive possession since he retained ownership, dominion, and control over it. Id. The Court thus concluded that the defendant received ineffective assistance of counsel because his conduct amounted to one offense for which he could have been charged with only one count of possession of a firearm. Id.
We find Jones instructive. Possession of a firearm, being a crime of possession, accordingly criminalizes a continuing course of conduct, wherein each "repeated" offense is connected to the last, and multiple "acts" cannot be distinguished. See Escobar, 523 S.W.3d at 549 n.3. Thus, here, the State's evidence of three "instances" in which Defendant either held or exercised control over the firearm did not establish three separate acts of possession. Instead, the evidence demonstrated how Defendant engaged in his whole course of conduct in possessing the firearm on February 1, 2016. A "jury need only be unanimous as to the ultimate issue of guilt or innocence, and need not be unanimous as to the means by which the crime was committed."
*190 State v. Richter, 504 S.W.3d 205, 211 (Mo. App. W.D. 2016). Since this case involved Defendant's course of conduct in possessing the firearm and not multiple acts of possession, it was not necessary for Instruction 5 to identify one "instance" of Defendant's possession to preserve his right to a unanimous verdict. The trial court did not plainly err in submitting Instruction 5 to the jury. Point I is denied.
Propensity Evidence
In his second point, Defendant argues that the trial court abused its discretion in admitting evidence that he pointed a firearm at Melissa because such evidence was improper propensity evidence. We disagree.
We review the trial court's admission of evidence for an abuse of discretion. State v. Watson, 391 S.W.3d 18, 21 (Mo. App. E.D. 2012). An abuse of discretion occurs where the trial court makes a ruling that is against the logic of the circumstances and so unreasonable as to indicate a lack of careful consideration. Id. Further, the erroneous ruling must have resulted in prejudice to the defendant by affecting the outcome of the trial. Id. The trial court, however, has broad discretion to admit or exclude evidence. Id.
On appeal, Defendant claims that Officer Stetina's testimony that Defendant had admitted to pointing the firearm at Melissa earlier in the evening was improper propensity evidence because it was introduced by the State merely to show that he "acted in conformity with his character and possessed a firearm," such that it was more prejudicial than probative. This argument is unavailing.
"In general, evidence of uncharged crimes is not admissible for the purpose of showing the defendant's criminal character or propensity to commit such crimes." State v. Young, 367 S.W.3d 641, 645 (Mo. App. E.D. 2012). However, an exception to this rule exists "where the evidence of the uncharged crime is both logically and legally relevant." Id. Evidence is logically relevant if it has some legitimate tendency of directly establishing the accused's guilt of the charges for which he is on trial; evidence is legally relevant if its probative value outweighs its prejudicial effect. Id. Under this exception, evidence of an uncharged crime may be admissible "to establish motive or intent to commit the crime with which the defendant is charged." Watson, 391 S.W.3d at 21. "Additionally, this type of evidence, when it is part of the surrounding circumstances or sequence of events relating to the charged crime, is 'admissible to present a complete and coherent picture of the events that transpired.' " Id. (quoting State v. Primm, 347 S.W.3d 66, 70 (Mo. banc 2011) ). "The determination of whether any prejudice outweighs the probative value of evidence of uncharged acts is within the sound discretion of the trial court." Id.
Here, Officer Stetina testified that while he interviewed Defendant, Defendant admitted to pointing the firearm at Melissa and telling her to "swear on a bible that she wasn't doing anything outside of the home." Evidence that Defendant pointed the firearm at Melissa provided a complete and coherent picture of the events that occurred in that it tended to show that Defendant was physically holding the firearm at the time he threatened her. Such evidence went to establish that Defendant had actual possession of the firearm, and therefore, legitimately tended to prove Defendant's guilt of the charged crime of unlawful possession of a firearm. In turn, the probative value of this evidence, which bore directly upon the issue of possession, was not outweighed by its prejudicial effect. The trial court did not *191 abuse its discretion in admitting this evidence. Point II is denied.
Conclusion
The Judgment is affirmed.
Lisa P. Page, C.J., and Theresa Counts Burke, Sp. J., concur.

Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.

Because Defendant, Melissa Reagan, and their son John Reagan have the same surname, we refer to Melissa and John by their first names. No familiarity or disrespect is intended.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Defendant premises his claim to a unanimous jury verdict on both the Missouri and United States constitutions. However, "the federal constitution does not require a unanimous verdict in state prosecutions," and as such, we consider only Defendant's claim that his rights under the Missouri Constitution were violated. State v. Celis-Garcia, 344 S.W.3d 150, 155 (Mo. banc 2011) (citing Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) ).