

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,  )
  )
    Plaintiff-Respondent,  )
  )
v.  )    No. SD37623
  )
LOUIS ANTHONY MEALER,  )    **Filed: July 25, 2023**
  )
    Defendant-Appellant.  )

APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Dean G. Dankelson

**<u>AFFIRMED</u>**

Louis Anthony Mealer ("Defendant"), after a jury trial, was convicted of two counts of first-degree statutory sodomy, one count of second-degree child molestation, one count of first-degree endangering the welfare of a child, and one count of incest.[1]

In two points on appeal, Defendant claims the circuit court: (1) abused its discretion in not allowing Defendant to testify about why he believed that his victim ("Victim") would have made up the allegations against him; and (2) plainly erred in not declaring a mistrial because the circuit court failed to provide Defendant with a functioning auxiliary listening device at trial. Finding no reversible error in either claim, we affirm.

---

[1] *See* sections 566.062, 566.068, 568.045, and 568.020. Unless otherwise indicated, all statutory citations are to RSMo 2016, including, as applicable, statutory changes effective January 1, 2017.

Defendant, Victim's grandfather, does not challenge the sufficiency of the evidence to support his convictions, making it unnecessary to recite the details of the sexual acts perpetrated against Victim. Those acts took place at Defendant's home in the summer of 2019, when Victim was ten years old. Victim immediately told her grandmother ("Grandmother") what had happened. Grandmother called Victim's mother and told her that she was bringing Victim home, and if Defendant showed up there, he should not be allowed inside the house. When Victim got home, she wrote down on a piece of paper what had happened to her.

Victim's parents took Victim to the Child Advocacy Center the next day, and a physical examination revealed that the area around Victim's hymen was swollen, agitated, and engorged, indicating trauma that was consistent with the actions that Victim had reported. We will recite additional procedural background below in our analysis of Defendant's second point on appeal.

*Point 1*

Defendant's first point claims:

> The trial court erred in limiting [Defendant]'s testimony, by not allowing him to testify that [Victim]'s parents separated around the time of the alleged offenses when her father "cheated on" her mother, and [Victim] overheard [Defendant] tell a friend about this and how [Defendant] was angry and wanted to protect [Victim]'s mother from [Victim]'s father, whom [Defendant] believed to be a "monster," . . . in that the court's ruling . . . den[ied Defendant] the opportunity to fully refute the allegations by showing that they might have occurred because [Victim] wanted to protect her father from [Defendant], and [Defendant] was prejudiced because this testimony would have given the jury an explanation or motive why [Victim] would make up the allegations.

We disagree.

> "'The standard of review for the admission of evidence is abuse of discretion.'" *State v. Patrick*, 566 S.W.3d 245, 253 (Mo. App. W.D. 2019)

2

(quoting *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011)). "The trial court has broad discretion in choosing to admit evidence[,] and we will not disturb this discretion unless it is against the logic of the circumstances and so unreasonable as to show a lack of careful consideration." *Id.* (citing *State v. Freeman*, 269 S.W.3d 422, 426 (Mo. banc 2008)). "'For evidentiary error to cause reversal, prejudice must be demonstrated.'" *Id.* (quoting *State v. Reed*, 282 S.W.3d 835, 837 (Mo. banc 2009)). "'Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial.'" *Id.* (quoting *State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006)).

*State v. Shaddox*, 598 S.W.3d 691, 694 (Mo. App. S.D. 2020) (quoting *State v. Boyd*, 597 S.W.3d 263, 274 (Mo. App. W.D. 2019)).

While it has long been recognized that defendants in rape or sexual assault cases should be allowed to introduce evidence of a prosecuting witness's motivation to lie or fabricate, "the scope of the evidence used to show bias is within the broad discretion of the trial court." *State v. Perkins*, 656 S.W.3d 285, 294 (Mo. App. E.D. 2022) (quoting *State v. Taylor*, 588 S.W.3d 632, 637 (Mo. App. W.D. 2019)).

Several months before Victim told Grandmother about Defendant's sexual abuse, Victim's father had "cheated on" her mother and had moved out of the home. Victim's parents soon reconciled, and her father moved back in approximately three months before Victim's allegations arose in this case. Defendant contended (outside the presence of the jury) that Victim made up the allegations against him because Defendant – the father of Victim's mother – had said bad things in Victim's presence about Victim's father and that it had upset Victim. The circuit court ruled, *in limine*, that Defendant was not allowed to bring up the troubles between Victim's parents as a motive for Victim to lie, stating, "Where I'm having the difficulty is showing how [Victim] may have some angst toward her father. How does making the allegation against [Defendant] give her – why would [Victim] make the

3

allegation against [Defendant] if she's upset with her father?"[2]  At trial, Victim testified on direct examination that she had not been upset or angry with Defendant until he touched her. Defense counsel did not attempt to impeach that testimony during his cross-examination of Victim.

After the State rested, Defendant testified in his own defense.  During that testimony, his attorney asked Defendant, "Why do you think [Victim] would say you did this?"  The State objected that the question called for speculation.  Defense counsel argued that Defendant should be allowed to testify to his own personal beliefs, but the circuit court stated that it would not allow him to speculate.  The court further stated that the proposed testimony was irrelevant and was based on hearsay.  Defense counsel did not ask to make an offer of proof as to what Defendant's answer to counsel's question would have been.

Defense counsel also made no attempt to ask a question that did not call for speculation.  For instance, counsel did not ask Defendant if he made a derogatory or threatening statement about Victim's father in Victim's presence.  More importantly, counsel did not preserve his allegation of error by making an offer of proof as to what Defendant's testimony would have been.  *See* ***State v. Shifkowski***, 57 S.W.3d 309, 315 (Mo. App. S.D. 2001).  Finally, Victim's parents had reconciled, and Victim's father had moved back into the home approximately three months before the charged conduct took place, allowing the circuit court to reasonably determine that the alleged incident was too remote in time to be of legal relevance.  *See* ***Perkins***, 656 S.W.3d at 295-96  ("[e]vidence is legally relevant when the probative value of the evidence outweighs unfair prejudice, confusion of

_____

[2] Although it is possible that the circuit court misunderstood why Defendant thought the question would produce an answer that would demonstrate that Victim had a reason to lie, we must affirm the circuit court's ruling on any legal basis that would support it.  ***Stanley v. State***, 420 S.W.3d 532, 543 n.9 (Mo. banc 2014).

4

the issues, misleading the jury, undue delay, waste of time or cumulativeness").  For all of these reasons, Defendant has failed to demonstrate that the circuit court's ruling was "against the logic of the circumstances and so unreasonable as to show a lack of careful consideration."  ***Patrick***, 566 S.W.3d at 253 (citing ***Freeman***, 269 S.W.3d at 426).

Point 1 is denied.

*Point 2*

Defendant's second point claims:

> The trial court plainly erred in not declaring a mistrial, . . . in that the trial court failed to provide [Defendant] with a functioning auxiliary listening device at trial, and failed to make a determination that any such device was working for [Defendant] at trial.

Defendant concedes that his point is not preserved for review, and he requests plain-error review as provided in Rule 30.20.[3]  That rule allows us to consider "plain errors affecting substantial rights … when [we find] that manifest injustice or miscarriage of justice has resulted" from the alleged error.  ***State v. Sinyard***, 294 S.W.3d 80, 82 (Mo. App. S.D. 2009).  "In deciding whether or not to grant plain error review, this Court must first examine whether the claim of plain error is one that, on its face, establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred."  ***Id.***  Plain error is error that is evident, obvious, and clear, and it will only serve as a basis for the grant of a new trial if the error was outcome determinative.  ***Id.***

The record in regard to Defendant's requests for an assistive listening device is as follows.

---

[3] Unless otherwise indicated, all rule references are to Missouri Court Rules (2023).

At a pre-trial "491"[4] hearing, the following exchange occurred:

BY [defense counsel]:  Is there a hearing device that my client can use? He is having trouble hearing.

BY THE COURT:  Maybe. Try that.

BY [defense counsel]:  Thank you, Your Honor.

BY THE COURT:  And I will try to make sure that I speak into the microphone. I am not sure if that earpiece works, but we will try it.

(By [Defendant])[:]  Yes, sir.

BY THE COURT:  And we will try to make sure we speak into the microphone.

(By [Defendant])[:]  Thank you. I apologize.

At a pre-trial ***Frye***[5] hearing, Defendant responded appropriately to all questions asked of him and made no reference to needing an auxiliary listening device.

Prior to *voir dire*, defense counsel made the following record:

BY [defense counsel]:  We would also like to ask to make a record in regards to the hearing device for our client. Due to the fact that our client has a hearing issue, the sound is – it has come to my attention that the sound system in the courtroom is not the best and we don't have hearing devices in this courtroom.

---

[4]

In a criminal case involving a Chapter 566 offense, [section] 491.075 provides a procedure for determining the admissibility of a statement made by a child under the age of 14. The child's statement is admissible in evidence in a criminal proceeding as substantive evidence to prove the truth of the matter asserted if "[t]he court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability...." [Section] 491.075.1(1). This statute does not require the person interviewing the child to testify at the Chapter 491 hearing or at trial. *Id*.; *see State v. Sanders,* 473 S.W.3d 675, 678 (Mo.App.2015).

***State ex rel. Jackson v. Parker***, 496 S.W.3d 559, 560 n.2 (Mo. App. S.D. 2016).

[5] *See **Missouri v. Frye***, 566 U.S. 134 (2012).

6

BY THE COURT:                 I am not aware of a hearing device.  When we take a recess, I will see if there is anything available, but my information is as of yesterday, the sound system and audiovisual equipment in this courtroom do not function.  So – and again, as we have discussed – I don't know if we have discussed on the record, but I'm over in Carthage today, not my typical courtroom, but this is not an issue that's been brought to the Court's attention prior to this time.  But we will work on seeing if we can find a solution.  I'm not sure that there is one, but we will work to see if we can find a solution this morning.

BY [defense counsel]:         I do appreciate that, Your Honor.  I do – I would like to address just to make sure that the Court was aware that [Defendant] did have a hearing device at a 491 hearing that was addressed at your courtroom the last time, that was addressed in your courtroom.

BY THE COURT:                 Okay.

After the State had completed its *voir dire*, defense counsel raised the hearing issue

again as follows:

BY [defense counsel]:         I would like to address the Court once again about [Defendant]'s hearing and the audio in the courtroom.  Based off the fact that we've gone through some of our voir dire at this point, [Defendant] is having some issues hearing still.  There's been a lot of inflection and stuff that he can hear based off things.  He's not having a problem hearing yourself, however, during the trial we are afraid that there is going to be issues hearing the witnesses.  At this point not being able to hear all the jury panel it leaves us in a situation where [Defendant] can't necessarily help at all times with his picking of the jury at this point, let alone be able to possibly be able to help in his own defense at trial with the jury – or the witnesses on the stand.  At this point, I would say that it falls under his Fifth, Fourteenth – or

7

|                        |                                                                                                                                                                                    |
|------------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                        | Fifth, Sixth, and Fourteenth Amendments to the Constitution under due process and his right to counsel and the subsections of the Missouri Constitution would fall with those.     |
| BY THE COURT:          | What relief are you specifically requesting right now?                                                                                                                              |
| BY [defense counsel]:  | At this point I would say, because of the fact that [Defendant] can't hear, unless there is another way that we can get some type of device or some kind of a hearing assistance at this point, I would have to ask for this to be declared a mistrial and ask for us to move out. |
| BY THE COURT:          | [Prosecutor].                                                                                                                                                                       |
| BY [Prosecutor]:       | Judge, I guess I would ask does [Defendant] have any type of hearing devices that he uses just in his daily life that he doesn't have here?                                          |
| BY THE COURT:          | Does [sic] have a hearing aid or something like that he uses in everyday life?                                                                                                      |
| BY [defense counsel]:  | He does not have a hearing aide [sic] that I know of, Your Honor, but he is on disability and part of that disability is hearing, as well as back conditions, carpal tunnel and other things that have affected him and those have been addressed throughout this process. |
| BY THE COURT:          | How has that been addressed throughout the process? My question specifically is prior to today, did you file any sort of motion or notice with the Court that your client was going to require hearing assistance? |
| BY [defense counsel]:  | At the 491 hearing –                                                                                                                                                                |
| BY THE COURT:          | I didn't ask that. I asked prior to today, did you file a motion or ask this Court for [Defendant] to have hearing assistance?                                                      |
| BY [defense counsel]:  | Prior to today I had not filed a motion with this Court for the hearing assistance. It was my understanding at the – when we were at the 491 |

8

|  |  |
|---|---|
|  | hearing and we had requested for hearing assistance – |
| BY THE COURT: | Which was not done in writing, it was something brought up as we were getting ready to start the hearing. And in that courtroom the Court was able to make that accommodation. Isn't that correct? |
| BY [defense counsel]: | That is correct, Your Honor. |
| BY THE COURT: | So tell me how the Court was supposed to prepare for today when you did not provide any notice to the Court or any request to the Court prior to today for accommodation for your client's hearing issues? |
| BY [defense counsel]: | At this point, Your Honor, I understand I had not filed a motion for the Court to be aware of it at this point. We brought it up this morning in addressing that we had hearing issues, we were – said that we would bring it up at a later time. We are addressing the Court as stated. |
| BY THE COURT: | [Prosecutor], anything you wish to add at this point in time? |
| BY [Prosecutor]: | I don't think so, Your Honor. |
| BY THE COURT: | The Court is not going to grant a mistrial at this time. What the Court will entertain is the prospect of picking a jury today and then going over to Joplin and finishing our trial in Joplin in the Division II Courtroom and start evidence over there tomorrow morning, which, [Prosecutor] you have something you want to say to that. |
| BY [Prosecutor]: | Well, Judge, only – I am fine with that if that's what we do. I mean we just got through notifying people to head this way. If we know we are going to do that, I would like to prevent them from having to drive all the way here just to be told to come back tomorrow. |

9

| | |
|---|---|
| BY THE COURT: | What is the timing of the trial?  Will we still be able to finish?  If we started tomorrow morning, would we still finish by the end of the day on Thursday? |
| BY [Prosecutor]: | Well, I would have probably hoped to get two witnesses on today.  And I think, by doing that, we would have finished easily with our case by the end of the day tomorrow and maybe even earlier in the day.  There are a couple of witnesses I'm still like back and forth on whether I'm going to actually put them on depending on how the evidence comes in. |
| BY THE COURT: | I understand. |
| BY [Prosecutor]: | But I don't know if we could get all of our evidence on in one day.  I think we would be fairly close to that. |
| BY THE COURT: | I'm not going to hold you to it, [Prosecutor].  I appreciate you guessing. |
| BY [Prosecutor]: | I think we will be close, Judge, if we start at 9:00 and we will definitely have people here ready to go right at 9:00 if that's what we do. |
| BY THE COURT: | What do you say, [defense counsel]? |
| BY [defense counsel]: | Based of [sic] the Court's discretion at this point,  Your Honor, I know that I would stand on my request.  And you have denied the Motion for Mistrial at this time. |

The trial was moved to the Joplin courthouse after the jury was selected.

During the trial in Joplin, the parties gave opening statements and heard testimony from Victim and Grandmother.  After Grandmother finished testifying, the following exchange took place:

| | |
|---|---|
| BY [defense counsel]: | Your Honor. [Defendant] cannot hear.  The one device you gave us had a corroded batter[y] so it is dead.  We changed the |

10

| | batteries and it still wasn't working because of the corrosion. |
|---|---|
| BY [defense counsel]: | He is trying. |
| BY [defense counsel]: | The other one is still white noise. He is trying to focus and pay attention. He didn't want me to interrupt [Grandmother's] testimony so I didn't, but I just want you to know. |
| BY [defense counsel]: | He's having trouble with the hearing device. |
| BY THE COURT: | We will work on it during the noon hour. |
| BY [defense counsel]: | Okay. Thank you. |

Defendant did not request any further relief at that time, and he testified during his direct examination that he could "hear . . . okay[.]"

Section 476.753.1(1) states as follows:

1. A designated responsible authority shall provide, based on a deaf person's expressed needs, auxiliary aids and services to interpret the proceedings to a deaf person and, if a deaf person gives testimony or other communication, to interpret the deaf person's testimony or other communication when:

(1) A deaf person is a party . . . at any stage of any judicial or quasi-judicial proceeding in this state . . . including, but not limited to, any . . . criminal court proceeding . . . preliminary hearing . . . or special proceeding[.]

We first note that it is not apparent from the record that Defendant was a "deaf person" so as to come within the provisions of section 476.753.[6] "A 'deaf person' is defined, in section 476.750, as 'any person who, because of a hearing loss, is not able to discriminate speech when spoken in a normal conversational tone regardless of the use of amplification devices.'" ***Sinyard***, 294 S.W.3d at 82.

---

[6] Similarly, section 476.756 discusses the use of auxiliary aids only for a "deaf person."

11

The evidence in the record supports a finding that Defendant was able to discriminate speech when spoken in a normal conversational tone, including questions during his own testimony, speech by the trial court, and questions during the *Frye* hearing. As a result, the record does not support a finding that section 476.753 actually applied to Defendant. As to his difficulties in hearing portions of *voir dire*, Defendant did not identify a panel member that he had trouble hearing so as to allow the circuit court to ask that person to speak up. Finally, the declaration of a "[m]istrial is a drastic remedy used only in the most extraordinary circumstances when grievous error cannot otherwise be remedied[,]" *State v. Brown*, 661 S.W.3d 27, 41 (Mo. App. S.D. 2023), and Defendant never requested any relief other than the drastic remedy of a mistrial.

Having failed to make a facial showing that the absence of an assistive hearing device resulted in a manifest injustice, we decline to review Point 2 for plain error.

The judgment of the circuit court is affirmed.


DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

GINGER K. GOOCH, J. – CONCURS

12