

# In the Missouri Court of Appeals
# Eastern District
## DIVISON FOUR

| | | |
|---|---|---|
| SALVATOR J. GRILLO, | ) | No. ED101655 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | |
| GLOBAL PATENT GROUP LLC and | ) | |
| DENNIS BENNETT, | ) | Honorable Richard C. Bresnahan |
| | ) | |
| Respondents. | ) | Filed: June 30, 2015 |

### *Introduction*

Plaintiffs Salvator Grillo and Global Pharma, L.L.C. (Pharma) (collectively, Plaintiffs) appeal the Circuit Court of St. Louis County's grant of summary judgment to defendants Dennis Bennett and Global Patent Group, L.L.C. (Patent) (collectively, Defendants) on their claims of breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and action for an accounting. Plaintiffs contend that the trial court erred in granting Defendants summary judgment because: (1) section 484.150 of the Missouri Revised Statutes permits a nonlawyer to receive a share of law firm profits; and (2) equity requires Defendants to pay Plaintiffs all promised compensation. We affirm.

### *Factual and Procedural Background*

Mr. Grillo is a nonlawyer Missouri resident and the sole owner of Pharma. Mr. Bennett is a lawyer licensed to practice law in Missouri and the sole owner of Patent, a law firm

organized in Missouri in 2007. Mr. Grillo worked for Patent as a business manager from 2007 until his termination in October 2009.

On May 3, 2012, Plaintiffs filed a petition against Defendants for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and action for an accounting. In their petition, Plaintiffs alleged the following facts: From 2004 to 2007, Mr. Grillo and Mr. Bennett were partners in a pharmaceutical patent business located in Washington, D.C. In 2007, Mr. Grillo and Mr. Bennett dissolved the business "with the intent of reforming a partnership." Mr. Bennett insisted that Mr. Grillo "transfer the new partnership" to St. Louis. "[R]elying on legal advice from his partner, [Mr. Bennett,]" Mr. Grillo incorporated Patent "on behalf of the partnership" in Missouri in 2007.[1] At that time, Mr. Bennett and Mr. Grillo "agreed and intended to operate [Patent] in accordance with the previous terms of their [Washington, D.C.] partnership." Mr. Grillo and Mr. Bennett further agreed that Mr. Grillo would advance start-up expenses and costs and Mr. Grillo and Mr. Bennett would share management responsibilities and "profits and losses equally." In 2007, Patent reimbursed Mr. Grillo for the start-up costs and expenses, and from 2007 to 2009, Mr. Bennett and Mr. Grillo shared equally in Patent's profits. From October 2009 through 2010, Mr. Grillo received less than half of Patent's profits, and in 2011, Mr. Grillo stopped receiving any share of Patent's profits. Mr. Grillo alleged that he "has not been compensated for his 50% ownership interest in [Patent.]"

Based on the above factual allegations, Plaintiffs raised two claims against Defendants and two claims against Mr. Bennett individually. In Plaintiffs' Count I for breach of contract against Defendants, they asserted that Mr. Grillo and Mr. Bennett "agreed and intended to share

---

[1] Following oral argument, Plaintiffs filed a motion "pursuant to Local Rule 370 to supplement and clarify the appellate record" with information regarding Mr. Bennett's residence prior to the formation of Patent. Because this matter does not "require discussion, development, or clarification," we deny the motion. Ct. of App. E.D. Rule 370(a).

2

[Patent's] profits and losses equally" and Defendants breached the agreement by failing to pay Mr. Grillo's share of the profits. In Count II for breach of the covenant of good faith and fair dealing against Mr. Bennett, Plaintiffs alleged that Mr. Bennett and Mr. Grillo had an attorney-client relationship, Mr. Bennett "promised to act in good faith and fair dealing with [Mr.] Grillo," and Mr. Bennett "breached the covenant of good faith and fair dealing" by renouncing the parties' agreement. In Count III for breach of fiduciary duty against Mr. Bennett, Plaintiffs claimed that Mr. Bennett breached his fiduciary duties to Mr. Grillo as a principal member of Patent and a licensed attorney because he did not intend to comply with the terms of the parties' agreement. In Count IV against Defendants for action in accounting, Plaintiffs alleged that Mr. Grillo was entitled to an accounting "because he is [Mr. Bennett's] partner" and Mr. Bennett purposefully and fraudulently misallocated Patent's expenses and profits and refused to pay Mr. Grillo his portion of Patent's profits.

Defendants filed their answer denying the petition's allegations and, subsequently, filed a motion for summary judgment on all counts. In their motion, Defendants asserted twenty-nine uncontroverted material facts, including the following: Mr. Bennett is a Missouri-licensed attorney, Mr. Grillo is not a lawyer, and Patent is a law firm in Missouri. Mr. Grillo worked for Patent as an administrative manager, and Patent paid him a salary as an independent contractor. Mr. Grillo understood that he could not be a partner in a Missouri law firm. In October 2009, Mr. Bennett terminated Mr. Grillo's employment with Patent. Mr. Grillo never retained Mr. Bennett as his lawyer, and Mr. Bennett provided no legal advice relating to Patent. In support of their statements of uncontroverted material facts, Defendants attached and cited to Mr. Grillo's and Mr. Bennett's depositions.

3

Based on their alleged uncontroverted facts, Defendants contended that they were entitled to summary judgment because the alleged verbal partnership and fee-splitting agreement between Mr. Grillo and Mr. Bennett violated Missouri law and rules of professional conduct and was therefore "illegal, invalid, and unenforceable." Defendants further argued that Counts II, III, and IV failed because "each claim has, at its core, a foundation premised upon the enforceability of a 'partnership agreement' between [Mr.] Grillo and [Mr.] Bennett in the ownership, management, and operation of [Mr.] Bennett's law firm."

In response, Plaintiffs filed a memorandum in opposition to Defendants' motion for summary judgment. In their memorandum, Plaintiffs reasserted that Mr. Grillo is "entitled to a share of the profits of the partnership [Patent]" because Defendants breached their partnership agreement with him. More specifically, Plaintiffs alleged that Mr. Grillo "acted as an equal Partner in [Patent]" and "fulfilled partnership qualities," including "control of business decisions"; "Bennett advised Grillo that he could remain a silent partner in Missouri"; and "the financial relationship between Grillo and [Patent] was consistent with partnership and entirely inconsistent and beyond the scope of an employee or independent contractor relationship." Plaintiffs further argued that they were entitled under principles of equity to a "quantum meruit share" of Patent's profits because Mr. Bennett's legal advice "misled" Mr. Grillo into "agreeing to be [a] silent partner" in Patent. Plaintiffs neither denied Defendants' statement of uncontroverted facts nor filed a statement of additional uncontroverted facts.

The trial court held a hearing on Defendants' motion for summary judgment. At the hearing, Plaintiffs moved for leave to amend their petition to add a count of quantum meruit, which Defendants opposed.

4

After hearing arguments, the trial court issued an order and judgment denying Plaintiffs' motion for leave to amend and granting Defendants' motion for summary judgment. In its judgment, the trial court found that there were no genuine issues of material fact and Defendants were entitled to judgment as a matter of law. The trial court explained that Plaintiffs' claims arose from an "alleged illegal verbal agreement of partnership." According to the trial court, if such an agreement existed, it would violate Rule 4-5.4 of the Missouri Rules of Professional Conduct and section 484.150, "which both prohibit a licensed attorney or law firm in the State of Missouri from dividing any fees or compensation received from them from the practice of law or in doing law business [with non-lawyers]." The court further stated that it could not consider Plaintiffs' claim "that it would be unjust for the Defendants not to honor the alleged agreement."

Plaintiffs filed a motion for reconsideration, and the trial court denied the motion. Plaintiffs appeal.

### *Standard of Review*

We review a grant of a summary judgment *de novo,* and view the record in the light most favorable to the party against whom judgment was entered. ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). We assume as true every fact set forth by affidavit or otherwise in support of the moving party's summary judgment motion unless the non-movant has denied it in its response. Id. The non-moving party's response must demonstrate the existence of some genuine dispute relating to a material fact necessary to the plaintiff's right to recover. Id. at 381. This court will uphold summary judgment only if it finds that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Id. at 376; Rule 74.04(c).

*Discussion*

In their first point on appeal, Plaintiffs claim that the trial court erred in granting summary judgment to Defendants because section 484.150 "prohibits a lawyer only from dividing fees – not sharing profits – with a nonlawyer." To support their position, Plaintiffs contend that: (1) reading section 484.150 to invalidate profit-sharing agreements would improperly render the later-adopted Rule 4-5.4(a)(4) a nullity; (2) permitting profit-sharing arrangements does not provide nonlawyers control over the delivery of legal services; (3) reading section 484.150 to invalidate profit-sharing agreements would create an ambiguity that did not exist when the statute was enacted; and (4) long-standing authority allows profit sharing by nonlawyer employees. In response, Defendants assert that section 484.150 applied to the agreement between Mr. Grillo and Mr. Bennett and rendered that agreement unenforceable under Missouri law.

Missouri has long held that public policy prohibits agreements between lawyers and nonlawyers to divide fees or compensation received in the practice of law or doing law business. See Carey v. Gossom, 204 Mo.App. 695, 917 (Mo.Ct.App. 1920). Section 484.150, which prohibits fee-splitting between lawyers and nonlawyers, provides in pertinent part that:

> [i]t shall be unlawful for any licensed attorney in the state of Missouri to divide any fees or compensation received by him in the practice of law or in doing law business with any person not a licensed attorney or any firm not wholly composed of licensed attorneys, or any association or corporation, and any person, firm, association or corporation violating this section shall be deemed guilty of a misdemeanor[.]

Mo. Rev. Stat. § 484.150.1. Additionally, Rule 4-5.4(a) of the Missouri Rules of Professional Conduct prohibits a lawyer or law firm from sharing legal fees with a nonlawyer except in four limited circumstances. Of relevance here, subsection (4) provides that "a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is

6

based in whole or in part on a profit-sharing arrangement[.]" Rule 4-5.4(a)(4). The rules of professional conduct have the force and effect of law in Missouri. Law Office of Gary Green, P.C. v. Morrissey, 210 S.W.3d 421, 425 (Mo.App.S.D. 2006).

Plaintiffs assert that Rule 4-5.4(a)(4) "plainly allows law firm profit-sharing between lawyers and nonlawyers." Plaintiffs contend that reading section 484.150(1) to prohibit profit-sharing agreements would contradict "the clear permission for profit-sharing in Rule 4-5.4(a)(4)."

Contrary to Plaintiffs' assertion, there is no inherent conflict between section 484.150(1)'s general prohibition on profit-sharing between lawyers and nonlawyers and Rule 4-5.4(a)(4)'s limited exception allowing lawyers to include nonlawyers in compensation and retirement plans. The Missouri Supreme Court qualified the exception to the general rule prohibiting lawyers from dividing fees or compensation with nonlawyers by stating "even though the plan is based in whole or in part on a profit-sharing arrangement." By including this qualifying language, the Court intended profit-sharing arrangements between lawyers and nonlawyers to be otherwise prohibited. "When a statute specifically provides for exceptions, items not excluded are covered by the statute." Knight v. Johnson, 741 S.W.2d 842, 845-846 (Mo.App.E.D. 1987). Accordingly, prohibiting profit-sharing agreements under the circumstances here does not render Rule 4-5.4(a)(4) a nullity.[2]

---

[2] Plaintiffs argue that the purpose of Rule 4-5.4 is to protect a lawyer's professional independence of judgment and "profit-sharing plans do not unduly undermine the professional independence of the lawyer delivering legal services." To support their contention, Plaintiffs cite Restatement (Third) of the Law Governing Lawyers § 10 cmt b. Comment b provides that Rule 4-5.4 should not be construed as "making sure that nonlawyers do not profit indirectly from legal services in circumstances and under arrangements presenting no significant risk of harm to clients or third persons." Plaintiffs fail to explain how an agreement to "share profits and losses equally" presents no risk of harm to clients or third persons or how Patent's profits are indirectly

Additionally, Plaintiffs argue that reading section 484.150 to invalidate profit-sharing agreements would create an ambiguity that did not exist when the statute was enacted. Specifically, Plaintiffs contend that when section 484.150 was enacted, "the term 'compensation' was used synonymously with 'fees' and referred to what a lawyer was paid on a particular case." Plaintiffs conclusorily assert that "'fees or compensation' refer only [to] fee-division and not profit sharing." Plaintiffs cite no authority for this distinction. Nor do they demonstrate that Patent's profits differ from the fees and compensation received for its legal services.

Plaintiffs also assert that long-standing authority allows profit sharing by nonlawyer employees. In support of their position, Plaintiffs cite cases from other jurisdictions that involve compensation agreements that are factually distinguishable the agreement Plaintiffs allege here. Moreover, "[o]ut-of-state appellate decisions do not constitute controlling precedent in Missouri courts." Craft v. Philip Morris Companies, Inc., 190 S.W.3d 368, 380 (Mo.App.E.D. 2005).

The record reveals that Mr. Grillo was a nonlawyer, Mr. Bennett was a lawyer licensed to practice in Missouri, and Patent was a law firm. The alleged agreement between Mr. Grillo and Mr. Bennett provided that Mr. Grillo and Mr. Bennett "share [Patent's] profits and losses equally." Thus, the alleged contract between Mr. Grillo and Mr. Bennett violated section 484.150.

"When the subject or purpose of a contract concerns the doing of an illegal act or is against the public policy of the state, the contract will not be enforced by the courts." Interstate Agri Servs., Inc. v. Bank Midwest, N.A., 982 S.W.2d 796, 800 (Mo.App.W.D. 1998). Because the alleged profit-sharing agreement violated section 484.150, the trial court properly entered

related to legal services rendered by Patent. Nor do Plaintiffs cite any legal authority holding that sharing profits does not undermine a lawyer's professional independence.

8

summary judgment on Plaintiffs' claim for breach of contract.[3]  See Am. Civil Liberties Union/E. Missouri Fund v. Miller, 803 S.W.2d 592 (Mo. banc 1991) (holding a contractual obligation for lawyer to deliver attorney's fees to the ACLU was unenforceable because it violated section 484.150).

Plaintiffs' claims for breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and action for an accounting were based on the unenforceable partnership agreement between Mr. Grillo and Mr. Bennett.  Accordingly, the trial court properly granted Defendants summary judgment on those claims.   Point denied.

In their second point on appeal, Plaintiffs assert that the trial court erred in granting summary judgment to Defendants because Plaintiffs were entitled to equitable relief in that Mr. Bennett "stands to reap unjust enrichment if he can successfully argue section 484.150 renders the promised profit sharing unlawful."  Defendants counter that: (1) Plaintiffs failed to preserve the issue for appeal; and (2) Mr. Grillo was in pari delicto with Mr. Bennett and therefore not entitled to equitable relief.

---

[3] Additionally, the alleged agreement between Mr. Grillo and Mr. Bennett violated Rule 4-5.4(b) of the Missouri Rules of Professional Conduct, which prohibits a lawyer from forming a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.  The rules of professional conduct have the force and effect of law in Missouri, and a court will not enforce an agreement that violates those rules.  See, e.g., Law Office of Gary Green, P.C. v. Morrissey, 210 S.W.3d 421, 425 (Mo.App.S.D. 2006) and Neilson v. McCloskey, 186 S.W.3d 285, 287 (Mo.App.E.D. 2005).  In their petition, Plaintiffs alleged that Mr. Grillo and Mr. Bennett had been partners in a business in Washington, D.C. and dissolved the business "with the intent of reforming a partnership[,]" namely, Patent.  Plaintiffs alleged that Mr. Bennett and Mr. Grillo "agreed and intended to operate [Patent] in accordance with the previous terms of their partnership" and intended to "share profits and losses equally."  In their memorandum in opposition to Defendants' motion for summary judgment, Plaintiffs asserted that "the financial relationship between Grillo and [Patent] was consistent with partnership and entirely inconsistent and beyond the scope of an employee or independent contractor relationship."  Rule 4-5.4(b) prohibited Mr. Bennett and Mr. Grillo from being partners in a law firm.  Thus, the alleged partnership agreement was also unenforceable as a matter of law because the agreement violated Rule 4-5.4(b).

9

As an initial matter, we address Defendants' assertion that Plaintiffs failed to preserve their claim for equitable relief. "This court's review of the grant of summary judgment is limited to those issues raised in the trial court, and this court will not review or convict a trial court of error on an issue that was not put before the trial court to decide." United Mo. Bank, N.A. v. City of Grandview, 105 S.W.3d 890, 895 (Mo.App.W.D.2003) (internal quotation omitted). Further, "[t]he powers of a court of equity to adjudicate are broad but are limited to the claim for relief and issues made by the pleadings." City of Greenwood v. Martin Marietta Materials, Inc., 311 S.W.3d 258, 264 (Mo.App.W.D. 2010).

The record reveals that Plaintiffs did not raise an equitable claim in their petition. Plaintiffs alleged claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and action in accounting. After Defendants moved for summary judgment, Plaintiffs orally moved for leave to file an amended petition adding a count of quantum meruit, which the trial court denied.

"Mentioning an alternate theory for relief in a later motion does not invest the trial court with authority to address claims not presented in a pleading." Swift v. Fed. Home Loan Mortgage Corp., 417 S.W.3d 342, 348 (Mo.App.S.D. 2013). Because Plaintiffs did not seek equitable relief in their petition, we will not address Plaintiffs' claim that the trial court erred in failing to grant them such relief. See Swift v. Federal Home Loan Mort. Corp., 417 S.W.3d 342, 347 (Mo.App.S.D. 2013). Point denied.

*Conclusion*

We affirm the judgment of the trial court.

_Patricia L. Cohen_
_____
Patricia L. Cohen, Presiding Judge

Roy L. Richter, J., and
Robert M. Clayton III, J., concur.