

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED107266 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Francois County |
| vs. | ) | |
| | ) | Honorable Wendy W. Horn |
| DANIEL W. IRWIN, | ) | |
| | ) | |
| Appellant. | ) | Filed: November 19, 2019 |

## Introduction

Daniel W. Irwin ("Defendant") appeals from the judgment of the trial court, which was entered upon a jury verdict convicting him of five separate counts of second-degree child molestation for acts committed against T.G. ("Victim"), a minor child. Defendant brings two points on appeal. First, Defendant contends the trial court abused its discretion and violated his rights under the Confrontation Clause in admitting the out-of-court prior section 491.075[1]

---

[1] All statutory references are to RSMo 2016 unless otherwise indicated. Section 491.075 provides a procedure for determining the admissibility of a statement made by a child under the age of fourteen in a criminal case involving a Chapter 566 offense:

> [The] statement is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

> (1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

> (2)(a) The child . . . testifies at the proceedings; or

hearing ("491 Hearing") testimony of Heather Nickelson-Mathieson ("Mathieson"), a Children's Division investigator, because the State failed to prove she was unavailable and he was denied an effective opportunity to cross-examine her at the 491 Hearing. Second, Defendant contends the trial court plainly erred in submitting verdict directors, Instructions 9, 10, 11, and 12, on Counts III and IV because they failed to sufficiently differentiate the sexual contact alleged in each, which violated his right to a unanimous jury verdict. He further contends the trial court plainly erred in failing to instruct the jury they could not convict him twice for a single act.

The trial court did not err in declaring Mathieson unavailable and admitting her 491 Hearing testimony at trial because, during her 491 Hearing testimony, Mathieson disclosed she would be living in England at the time of Defendant's trial and Defendant had an effective opportunity to cross-examine her at the 491 Hearing. The trial court did not plainly err in submitting verdict directors, Instructions 9, 10, 11, and 12, on Counts III and IV because the sexual contact alleged in Count IV was sufficiently differentiated from the sexual contact alleged in Count III. The trial court appropriately instructed the jury that each of the five charged counts constituted a separate offense and must be considered separately. Accordingly, we affirm the judgment of the trial court.

## Factual and Procedural Background

"We limit our summary of the relevant evidence to that necessary to decide Defendant's point[s] on appeal, and we view it 'in the light most favorable to the verdict.'" *State v. Lewis*,

---

(b) The child . . . is unavailable as a witness; or

(c) The child . . . is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child . . . unavailable as a witness at the time of the criminal proceeding.

§ 491.075.1(1).

514 S.W.3d 28, 31 (Mo. App. S.D. 2017) (quoting *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009)). Defendant was charged in St. Francois County by Grand Jury Indictment on June 22, 2017, with five counts of second-degree child molestation under section 566.068. The charges asserted Defendant had deviate sexual contact with Victim, a person less than twelve years old, for the purpose of arousing or gratifying his sexual desire by "placing his hand on [Victim]'s vagina," (Counts I, II, IV, and V) or "placing his fingers on [Victim]'s vagina" (Count III).

The facts underlying Defendant's charges are as follows. Defendant was a friend of Victim's family and a frequent visitor at Victim's residence. In April 2017, Victim told her mother Defendant had touched her vaginal area on seven instances. Victim told her mother the first incident occurred while she and Defendant watched *Finding Dory* on the living-room couch at her residence. Victim said Defendant tickled her stomach and put his hand into her pants and inside her underwear, resting his hand on top of her vagina. Victim told her mother the second incident occurred in a motel in Potosi, Missouri. Victim said she was sitting on Defendant's lap on a recliner when he reached under a blanket covering her, put his hand in her underwear, and tapped his fingers near her vagina on the skin. Victim told her mother the third incident occurred at the same motel in Potosi, Missouri, a few nights later when Defendant reached under a blanket covering her and put his hand in her underwear.[2]

Victim told her mother the fourth incident occurred while she watched *Lost* on the living-room couch at her residence with Defendant and her family. During that incident, Defendant reached under a blanket covering Victim and put his hand in her underwear. Victim told her mother the fifth incident occurred while she and Defendant watched *Me Again* on the living-

---

[2] Defendant was not charged in this case with the two incidents of touching that occurred in Potosi, Missouri, because those acts occurred outside of St. Francois County.

room couch at her residence. Victim said Defendant tickled her stomach, rubbed her leg, slid his hand into her underwear, touched her vagina, and then removed his hand and licked his fingers one at a time. Victim told her mother the sixth incident occurred while she attempted to watch *Lost* on the living-room couch at her residence with Defendant and her family, but the Internet kept "skipping out." Defendant put his hand under a blanket covering Victim and slid his hand into her underwear. Victim told her mother the seventh incident occurred at Defendant's photography studio while she sat on his lap looking at a computer screen. Defendant tickled Victim's stomach, slid his hand into her underwear, and placed his hand on top of her vagina.

*491 Hearing*

On December 18, 2017, the State filed a Notice Pursuant to Section 491.075.3. Specifically, the State intended to introduce out-of-court statements made by T.G to Mathieson, a Children's Division investigator, at trial. The trial court held the 491 Hearing on February 15, 2018.

On January 5, 2018, Mathieson was subpoenaed to testify at the 491 Hearing on February 18, 2015. Mathieson lived in the United States when she was subpoenaed. After she was subpoenaed but before the 491 Hearing, Mathieson moved to England. Mathieson testified at the 491 Hearing via Skype from her home in England. Mathieson communicated with the trial court through audio only, however, the trial court and the parties could see Mathieson on a video feed. Mathieson testified that, in her role as a Children's Division investigator, she received an investigation listing Defendant as the alleged perpetrator "for fondling and touching" Victim. Mathieson met with Victim and Victim's mother at their home for a "cursory interview"[3] on

---

[3] Mathieson explained the concept of a "cursory interview" in her testimony at the 491 Hearing. She testified a "cursory interview" is the first interview at which a Children's Division investigator meets and speaks with a child who is a suspected victim of abuse. She testified that, once the child makes a disclosure that abuse occurred, the Children's Division investigator usually stops the interview so he or she can make a Child's Advocacy Center

4

April 11, 2017.  Mathieson testified she knew Victim disclosed that Defendant had touched her "inappropriately" to her mother.  Mathieson recalled that when she asked Victim if Victim knew why Mathieson was there, Victim said because a family friend had touched her "inappropriately."  Mathieson testified Victim told her there were at least seven occasions where Defendant had touched her "inappropriately" on her "front," which Mathieson later determined was her vaginal area.

Mathieson testified Victim described three incidents to her during the cursory interview.  The first incident occurred while Victim and Defendant watched *Finding Dory* on the living-room couch at her residence.  Mathieson testified Defendant began "rubbing [Victim's] stomach, like [Victim's] lower abdomen and then slowly moved down to actually touching [Victim's] vaginal area" underneath Victim's clothes.  Victim told Mathieson this incident lasted five to ten minutes.  The second incident occurred at a motel in Potosi, Missouri.  Defendant watched a television show while sitting in a recliner and Victim sat on his lap.  Victim told Mathieson Defendant touched her vaginal area underneath a cover and licked his fingers after removing them from her underwear.  The third incident occurred at Defendant's photography business in Park Hills, Missouri.  Defendant cross-examined Mathieson regarding her interview of Victim.  Following Defendant's cross-examination, the State questioned Mathieson:

> Q:     [Mathieson], wait, before you leave, let me go ahead and make this record, if I can?  You live in England?
>
> A:     Yes.
>
> Q:     And you – so is it fair to say you will be living in England in [sic] May 3 and 4, of this year?

---

("CAC") referral.  She testified the purpose of stopping the cursory interview after one disclosure has occurred is to prevent the child from having to relive the trauma and experience by telling numerous people about the incidents numerous times.  She testified the child is asked further details about the abuse when he or she is later forensically interviewed by the CAC.

A: Yes. I will live here for a long time.

Q: Okay. So since you live in England we can only bring you back by a treaty. We have to arrest you by treaty and drag you across the ocean?

A: Yes.

Defendant told the trial court he had no further questions. The trial court told Mathieson she was "excused."

*Pre-Trial Motion Hearing*

Three days before trial, the trial court held a pre-trial motion hearing at which it heard argument on Mathieson's unavailability for trial. The State argued Mathieson was unavailable because she resided in England at the time of Defendant's trial. The State argued that, because England is a sovereign country and part of the United Kingdom, it could not compel Mathieson's testimony at Defendant's trial. In response, Defendant said, "I'm objecting, number one, she was able to appear via Skype at the 491 [Hearing]. And it was my understanding that if she wasn't here physically, the same could be done at trial." Defendant also argued that, while his cross-examination of Mathieson at the 491 Hearing was "extensive . . . [,] it was for the purpose of [the] 491 [Hearing] and not for the . . . same purpose that it would be at a trial."

The trial court ruled Mathieson was "clearly unavailable for trial" and was "made available for cross-examination for purposes of this case" during the 491 Hearing. In so ruling, the trial judge said, "[A]t the time she testified over Skype I think that it should have been and I'm certain that it was anticipated by everybody that she may not be available for jury trial. So I don't think this is terribly surprising to anybody." The trial court ruled Mathieson's testimony from the 491 Hearing could be read into the record at trial. Following the pre-trial motion hearing, Defendant prepared a redacted version of Mathieson's transcript. Defendant and the State later stipulated to that redacted version of Mathieson's transcript.

*Trial*

A jury trial was held on July 23 and July 24, 2018. At a pre-trial conference on the morning of July 23, 2018, Defendant objected to introducing the redacted version of Mathieson's transcript. He said:

> I'm objecting to [the reading of Mathieson's 491 Hearing testimony into the record], because I think it's important for the jury to see how she testifies if she were on a screen via Skype. So that's my – that's my objection. In conclusion, I don't think she's unavailable for the purpose of Skype, but maybe that's not true.

The trial court overruled his objection and admitted Mathieson's 491 Hearing testimony into evidence, finding Mathieson was "truly unavailable as a witness" and previously subject to cross-examination by Defendant.

Victim, Victim's mother, Victim's father, a CAC forensic investigator, a licensed professional counselor, a sergeant in the St. Francois County jail, and a lieutenant with the St. Francois County sheriff's office testified on behalf of the State at trial. A video of Victim's interview with the CAC forensic investigator was admitted into evidence. Mathieson's testimony from the 491 Hearing was read to the jury. When the State moved to read Mathieson's testimony into the record, Defendant renewed his objection, saying: "I'll just reincorporate what I discussed with [the trial court] and argued with [the trial court] and [the State]."

Defendant moved for judgment of acquittal at the close of the State's evidence. The trial court denied the motion. Defendant presented no evidence. Defendant then moved for judgment of acquittal at the close of all the evidence. The trial court denied the motion and the case was submitted to the jury for deliberations.

The trial court instructed the jury on all five charged counts of second-degree child molestation. Each verdict director described the charged incident of sexual contact.

Specifically, Instruction 9 read:

> As to Count III, if you find and believe from the evidence beyond a reasonable doubt:
>
>> First, that on or about during January 2017, in the County of St. Francois, State of Missouri, *at [Victim]'s house on an occasion they watched "Lost"*, the [D]efendant touched the genitals of [Victim], and
>>
>> Second, that [D]efendant did so for the purpose of gratifying [D]efendant's sexual desire, and
>>
>> Third, that [Victim] was a child less than twelve years old,
>
> then you will find the defendant guilty under Count III of child molestation in the second degree
> . . . .
> (emphasis added).

Instruction 10 included the same description as to the location and context of the sexual contact as Instruction 9, however, it instructed the jury to find Defendant guilty of child molestation in the third degree if it found "that [Victim] was a child less than fourteen years old."

Instruction 11 read:

> As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:
>
>> First, that on or about during January 2017, in the County of St. Francois, State of Missouri, *at [Victim]'s house on an occasion they watched "Lost" and the Internet was sometimes down*, the [D]efendant touched the genitals of [Victim], and
>>
>> Second, that [D]efendant did so for the purpose of gratifying [D]efendant's sexual desire, and
>>
>> Third, that [Victim] was a child less than twelve years old,
>
> then you will find the defendant guilty under Count IV of child molestation in the second degree
> . . . .
> (emphasis added).

Instruction 12 included the same description as to the location and context of the sexual contact as Instruction 11, however, it instructed the jury to find Defendant guilty of child

molestation in the third degree if it found "that [Victim] was a child less than fourteen years old." In Instruction 16, the jury was told: "The defendant is charged with a separate offense in each of the five counts submitted to you. Each count must be considered separately. You should return a separate verdict for each count and you can return only one verdict for each count." In Instruction 17, the jury was told: "Your verdict, whether guilty or not, must be agreed to by each juror" and "the verdict must be unanimous." Defendant raised no objection to the verdict directors submitted to the jury. The jury returned a verdict finding Defendant guilty of five counts of second-degree child molestation. The trial court sentenced Defendant to ten years' imprisonment in the Department of Corrections on each count, totaling fifty years.

This appeal follows.

## Discussion[4]

### Point I: Confrontation Clause

In his first point, Defendant maintains the trial court abused its discretion and violated his rights under the Confrontation Clause in admitting Mathieson's 491 Hearing testimony because the State failed to prove she was unavailable and he was denied an effective opportunity to cross-examine her at the 491 Hearing. Defendant argues the trial court's error prejudiced him because

---

[4] Defendant makes repeated use of the phrase "(cleaned up)" following legal citations throughout his brief, which he says is meant to "indicate that internal quotation marks, brackets, ellipses, footnote signals, alterations, citations, and other non-substantive prior alterations have been omitted from quotations." He cites to Jack Metzler's article entitled *Cleaning Up Quotations*, 18 J. APP. PRAC. & PROCESS 143 (2017), in support of his use of "(cleaned up)." We recognize that several courts at the federal and state levels have adopted the use of "(cleaned up)" citations when writing their opinions. Such a decision is in the discretion of each court and might very well enhance the readability and flow of its opinion, as a court is not writing to persuade but rather to demonstrate its decision is grounded in precedent. However, we urge advocates to avoid using "(cleaned up)" in the briefs they submit to this Court. In deciding a case, this Court needs to know the precise language being used in a case or statute. "(Cleaned up)" is frequently misused by advocates, impairing the credibility and persuasion of their argument. *See* Adam Eakman, *Why Attorneys Should Stop Using "(cleaned up)"*, ATTORNEY WORDS (Apr. 10, 2018), http://attorneywords.com/cleaned-up/. We agree that detailing all the alterations made to a quotation in a brief impairs readability. The solution to this problem is not "(cleaned up)." Mr. Eakman's article provides useful examples and resources to improve brief writing for both readability and persuasion while avoiding the use of "(cleaned up)." *Id.* Attorneys are also reminded of Missouri Supreme Court Rule 84.04(e) (2018), which provides "[l]ong quotations from cases and long lists of citations should not be included" in an appellant's brief. Rule 84.04(e).

Mathieson's testimony showed "how [Victim] came to be referred to the CAC for a forensic interview" and provided the "exclusive source of evidence that could tend to show a purpose of arousing or gratifying sexual desire."

*Standard of Review and Preservation of Error*

Trial courts generally "have broad discretion to admit or exclude evidence and this Court will only reverse upon a clear showing of abuse of discretion." *State v. Hughes*, 497 S.W.3d 400, 403 (Mo. App. E.D. 2016) (citing *State v. Moffett*, 474 S.W.3d 248, 250 (Mo. App. S.D. 2015)). However, "[t]he question of whether a defendant's rights under the Confrontation Clause were violated by a ruling of the trial court is a question of law that we review *de novo*." *State v. Sanders*, 473 S.W.3d 675, 677 (Mo. App. S.D. 2015) (internal citations omitted).

The State asserts Defendant did not preserve his argument that the trial court abused its discretion and violated his rights under the Confrontation Clause in ruling Mathieson was an unavailable witness because he "never asserted this specific claim at trial." The State contends Defendant's claim should be reviewed, if at all, only for plain error. "To preserve a claim of error, counsel must object with sufficient specificity to apprise the trial court of the grounds of the objection." *State v. Amick*, 462 S.W.3d 413, 415 (Mo. banc 2015) (quoting *State v. Stepter*, 794 S.W.2d 649, 655 (Mo. banc 1990)). These rules for preservation of error are applied to enable both the trial court and the appellate court "to define the precise claim made by the defendant," not "to enable the court to avoid the task of review, nor to make preservation of error difficult for the appellant." *Id.* (quoting *State v. Pointer*, 887 S.W.2d 652, 654 (Mo. App. W.D. 1994)).

We find Defendant adequately preserved this claim for appellate review. At the pre-trial motion hearing, Defendant objected to the State's argument and the trial court's ruling that

Mathieson was an unavailable witness. He said: "I'm objecting, number one, she was able to appear via Skype at the 491 [Hearing]. And it was my understanding that if she wasn't here physically, the same could be done at trial." At the pre-trial conference, Defendant objected again to the State's offer to read Mathieson's 491 Hearing testimony into the record:

> I'm objecting to [the reading of Mathieson's 491 Hearing testimony into the record], because I think it's important for the jury to see how she testifies if she were on a screen via Skype. So that's my – that's my objection. In conclusion, I don't think she's unavailable for the purpose of Skype, but maybe that's not true.

When the State moved to read Mathieson's testimony into the record at trial, Defendant renewed his objection, saying: "I'll just reincorporate what I discussed with [the trial court] and argued with [the trial court] and [the State]." Defendant also included this claim of error in his motion for new trial. Defendant's objections informed the trial court of his position that declaring Mathieson unavailable was error. Accordingly, we will consider Defendant's claim that the trial court violated his confrontation rights *de novo*.

*Analysis*

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The longstanding objective of the Confrontation Clause has been

> to prevent depositions or ex parte affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*State v. Brookins*, 478 S.W.2d 372, 373 (Mo. 1972) (quoting *Mattox v. United States*, 156 U.S. 237, 242-43 (1895)). Even if a violation of the Confrontation Clause is found, such a violation is "subject to the harmless[-]error test found in *Chapman v. California*, 286 U.S. 18, 24, 87 S. Ct.

824, 17 L. Ed. 2d 705 (1967)." *State v. March*, 216 S.W.3d 663, 667 (Mo. banc 2007) (citing *United States v. Chapman*, 356 F.3d 843, 846 (8th Cir. 2004)). The harmless-error test "requires that the error be harmless beyond a reasonable doubt." *Id.* (citing *Chapman*, 356 F.3d at 846). There must be "no reasonable doubt that the error's admission failed to contribute to the jury's verdict." *Id.* (citing *Chapman*, 356 F.3d at 846).

The right of confrontation at trial, however, is subject to exceptions. One such "exception . . . exists where a witness is unavailable and has given testimony which was subject to cross-examination at previous judicial proceedings against the same defendant." *State v. Holt*, 592 S.W.2d 759, 765-66 (Mo. banc 1980) (citing *Barber v. Page*, 390 U.S. 719 (1968) and *State v. Murphy*, 592 S.W.2d 727 (Mo. banc 1979)). This exception "aris[es] from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement." *Id.* (citing *Barber*, 390 U.S. at 722).

### Unavailability

Defendant argues the trial court's ruling that Mathieson was unavailable to testify at trial was erroneous because she "had previously been served with a subpoena, had not been released from that subpoena, and had a continuing obligation to attend [Defendant's trial]." Defendant further argues Mathieson "was always subject to service of process through Missouri and/or federal long-arm statutes" and the State "failed to make a good faith effort to secure [her] presence at [Defendant's] trial." Each of Defendant's arguments fail. The trial court correctly determined Mathieson was unavailable for trial, as she was beyond the reach of process and the requirement that the State make a good faith effort to secure her presence at trial was obviated.

We first address the requirements for unavailability under Missouri law and then discuss each of Defendant's arguments.

## Requirements for Unavailability

A witness is considered unavailable if "shown to be (1) deceased, (2) *beyond the reach of process*, (3) insane or physically ill, (4) kept away by the connivance, collusion or consent of the other party, or (5) where due diligence to secure the witness's attendance by compulsory process has failed." *State v. Hester*, 801 S.W.2d 695, 696 (Mo. banc 1991) (emphasis added) (citing *Welp v. Bogy*, 277 S.W. 600, 602 (Mo. App. 1925)).

## Mathieson's Subpoena for the 491 Hearing

Defendant first argues the trial court's ruling that Mathieson was unavailable for trial was erroneous because she "had previously been served with a subpoena, had not been released from that subpoena, and had a continuing obligation to attend [Defendant's trial]." Section 545.370 provides:

> Whenever a witness in a criminal case has been once subpoenaed or recognized to appear before any division of the circuit court, he shall attend under the same as such witness, from time to time, and from term to term, until the case be *disposed of*, or he be *finally discharged* by the court.

§ 545.370 (emphasis added). *See also* Rule 26.03[5] ("Whenever a witness in a criminal proceeding has been once subpoenaed . . . to appear before any court, he shall attend from time to time, until the case is disposed of or he is finally discharged by the court.").

Mathieson was subpoenaed on January 5, 2018, to attend the 491 Hearing held on February 15, 2018. Mathieson lived in the United States when she was subpoenaed. After she was subpoenaed but before the 491 Hearing, Mathieson moved to England. Mathieson testified at the 491 Hearing via Skype from her home in England. At the conclusion of her testimony, the

---

[5] All rule citations are to the Missouri Supreme Court Rules (2018) unless otherwise indicated.

trial court told her she was "excused." Defendant argues the trial court's declaration that Mathieson was "excused" does not conclusively establish she was "finally discharged." Because, according to Defendant, the trial court did not use the words "finally or fully excused or released or words to that effect," Mathieson was never discharged from her January 2018 subpoena and, therefore, could still be compelled to testify at his trial.

We find under these circumstances the trial court's declaration that Mathieson was "excused" at the conclusion of her 491 Hearing testimony was sufficient to finally discharge her from the January 2018 subpoena. Regardless, the trial court's rulings at the subsequent pre-trial motion hearing and pre-trial conference that Mathieson was "clearly" and "truly" unavailable confirm its intent to finally discharge her from the January 2018 subpoena. Defendant's arguments to the contrary are without merit.

<u>Subject to Service of Process under Missouri's Civil Long-Arm Statute and 28 U.S.C. § 1783</u>

Defendant next argues the trial court's ruling that Mathieson was unavailable for trial is erroneous because Mathieson "was always subject to service of process through Missouri and/or federal long-arm statutes" without resort to use of an international treaty, such as the Hague Convention. Both facets of Defendant's argument are without merit. The State of Missouri's authority to serve an individual with process ends at the State's lines. *See* Rule 54.13 (describing the rules for service of process *within* Missouri). Defendant cites Missouri's civil long-arm statute to support his argument that Mathieson "was never beyond the reach of process."[6] *See* §§ 506.500, 506.510. He cites to Section 506.500.1(1), which provides:

> Any person . . . whether or not a citizen or resident of this state . . . thereby submits such person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

---

[6] Section 545.360 provides "the provisions of law in civil cases, relative to compelling the attendance and testimony of witnesses . . . shall extend to criminal cases so far as they are in their nature applicable thereto."

14

(1) The transaction of any business within this state[.]

§ 506.500.1(1). Section 506.510 provides:

> Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in section 506.500, may be made by personally serving the process upon the defendant outside this state . . . and shall have the same force and effect as though the process had been served within this state.

§ 506.510.

Defendant argues jurisdiction over Mathieson is proper under section 506.500.1(1) because "[Defendant]'s charges arose from [Mathieson] doing business in this state" in that "she was involved in starting the investigation underlying [Defendant]'s criminal cause of action through her former position as a Children's Division investigator in the Twenty-Fourth Judicial Circuit." According to Defendant, because her investigation of Defendant's case constituted "the transaction of business" within Missouri, Section 506.510 includes "broad language" that suggests "Mathieson could be personally served with any process germane to the instant proceeding wherever she may be found," including England.

Defendant's argument is off base. It is true that Missouri has provisions that provide a mechanism to procure the attendance at trial of witnesses residing in foreign *states*. *See* § 491.400 *et. seq.* (Uniform Law to Secure Attendance of Witnesses from Within or Without State in Criminal Proceedings); *State v. Irby*, 254 S.W.3d 181, 193 (Mo. App. E.D. 2008). However, Defendant cites no Missouri authority—and we can find no such authority—that provides a mechanism to procure the attendance at trial of witnesses residing in foreign *countries*. It is well-settled that any party who wishes to effect service of process on another party living in a foreign country must comply with the requirements of an international treaty, such as the Hague Convention. *Peabody Holding Co., Inc. v. Costain Grp. PLC*, 808 F. Supp.

1425, 1439-41 (E.D. Mo. 1992) (holding that a defendant, who resided in England, was not properly served even though he received process according to Missouri rules and statues because service did not comply with the requirements of the Hague Convention).

Defendant also cites 28 U.S.C. § 1783 (2018) (the "Walsh Act")[7] to support his argument that Mathieson "was never beyond the reach of process." He argues that, because the State could have utilized the procedures of the Walsh Act, "a treaty was clearly not the exclusive means of securing her real time trial testimony." Defendant's argument misunderstands the Walsh Act's procedures. The Walsh Act provides a mechanism to procure the attendance at trial of witnesses residing in foreign countries. It provides:

> A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country . . . if the court finds that particular testimony . . . is necessary in the interest of justice[.]

28 U.S.C. § 1783(a). "The decision to issue a subpoena under [the Walsh Act] is left to the sound discretion of the court." *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 523 (D. Colo. 2003). Notably, § 1783(b) requires that service of a Walsh Act subpoena be made in compliance with Federal Rule of Civil Procedure 4(f). 28 U.S.C. § 1783(b); *Balk v. New York Inst. of Tech.*, 974 F. Supp. 2d 147, 156 (E.D.N.Y. 2013). Under Rule 4(f)(1), "service of process upon an individual outside any judicial district of the United States must be in conformity with an internationally agreed upon means, such as those authorized by the Hague Convention." FED. R. CIV. P. 4(f); *Balk*, 974 F. Supp. 2d at 156. Defendant's assertion that compliance with a treaty was not required to procure the availability of Mathieson finds no basis in law.

---

[7] 28 U.S.C. § 1783 is called the "Walsh Act" by several courts. *See generally United States v. Thompson*, 319 F.2d 665 (2d Cir. 1963); *State v. Aaron*, 745 P.2d 1316 (Wash. Ct. App. 1987); *Balk v. New York Institute of Tech.*, 974 F. Supp. 2d 147 (E.D.N.Y. 2013).

Good Faith Effort to Obtain Presence of Witness

Defendant also argues the State "failed to make a good faith effort to secure Mathieson's presence at trial" because it did not subpoena her under the Walsh Act to testify at his trial. Defendant cites to *People v. St. Germain*, 187 Cal. Rptr. 915 (Cal. Ct. App. 1982) as authority for his argument. In *St. Germain*, the California Court of Appeals held the prosecution's failure to attempt to subpoena an out-of-country witness under the Walsh Act rendered her former testimony inadmissible. *Id.* at 921-22. The court reasoned that, where the out-of-country witness is a resident or citizen of the United States and the United States has treaty provisions or a compact with the foreign country, attempting to secure a subpoena under the Walsh Act is required as part of the prosecution's "due diligence" in obtaining that witness' presence at trial. *Id.* at 922.

While *St. Germain* may provide Defendant with persuasive authority, it is not the law in Missouri.[8] Under Missouri law, the prosecution must make "a good faith effort, exercising reasonable diligence, to obtain the presence of the witness" to prove the witness is unavailable." *Irby*, 254 S.W.3d at 193 (internal citations omitted). However, "[w]hat constitutes due diligence turns on the facts of the particular case." *Murphy*, 592 S.W.2d at 731 (citing *State v. Lloyd*, 87 S.W.2d 418 (1935). The Southern District has held a witness' testimony during a prior judicial proceeding that he or she will be in a foreign country for a lengthy duration and will be out of the country during trial "obviate[s] the requirement . . . to show a 'good faith effort to obtain the presence of the witness at the hearing or trial.'" *State v. Bryan*, 60 S.W.3d 713, 718 (Mo. App.

---

[8] "[O]ut-of-state appellate decisions do not constitute controlling precedent in Missouri courts." *Grillo v. Glob. Patent Grp. LLC*, 471 S.W.3d 351, 356 (Mo. App. E.D. 2015) (quoting *Craft v. Philip Morris Cos., Inc.*, 190 S.W.3d 368, 380 (Mo. App. E.D. 2005)). *See also State v. McIntosh*, 540 S.W.3d 418, 425 n.5 (Mo. App. W.D. 2018) (quoting *State ex rel. Safety Roofing Sys., Inc. v. Crawford*, 86 S.W.3d 488, 493 n.4 (Mo. App. S.D. 2002)) ("While cases from other jurisdictions 'can provide useful and insightful guidance,' they 'are not conclusive or binding precedent.'").

S.D. 2001); *State v. Artis*, 215 S.W.3d 327, 335 (Mo. App. S.D. 2007). Here, the State asked Mathieson at the conclusion of her 491 Testimony whether she lived in England and would be living in England in May 2018. Mathieson responded she would "be [in England] for a long time." Given Mathieson's testimony, the requirement that the State make a good faith effort to obtain her presence at trial was "obviated," just as in *Bryan* and *Artis*. Therefore, the trial court correctly ruled Mathieson was unavailable at trial.

### Opportunity for Cross-Examination

Defendant argues the trial court's ruling he had an opportunity to cross-examine Mathieson at the 491 Hearing was erroneous because "the purposes of cross-examination at [the 491 H]earing were incongruent with the goals of confronting her at trial." Defendant contends his "very narrow purpose for cross-examination [of Mathieson at the 491 Hearing] was to dissuade . . . the trial court[] against finding trustworthiness to [Victim]'s out-of-court disclosures to Mathieson." Defendant maintains his purpose of cross-examining Mathieson at trial would have instead been to persuade the jury that "[Victim]'s . . . disclosures to [Mathieson] were incredible[ and] also that . . . Mathieson herself was unworthy of belief because of her stated bias that she assumed the truth of [Victim]'s accusations in the first instance."

"Where the initial opportunity to cross-examine a witness is sufficient to provide substantial compliance with the right to meet witnesses 'face-to-face,' subsequent admission of that testimony at trial offends neither the Missouri Constitution nor its federal counterpart." *State v. Aaron*, 218 S.W.3d 501, 507 (Mo. App. W.D. 2007) (citing *State v. Lindsay*, 709 S.W.2d 499, 504 (Mo. App. W.D. 1986)). In Missouri, a party offering prior testimony "must show that (1) the declarant is unavailable, (2) the parties are the same, or had the same interest in the litigation, and (3) the matters at issue in both cases are substantially identical." *Id.* at 512 (citing

18

*Bartlett v. Kan. City Pub. Serv. Co.*, 160 S.W.2d 740, 743 (Mo. 1942)). "[T]he test of admissibility is whether the party against whom prior testimony is now offered had, at the time the testimony was originally given, the same interest and motive in his cross-examination." *Id.* at 508 (internal quotations and citations omitted). Only when a defendant asserts a limitation was placed upon his or her opportunity to cross-examine the witness at the prior hearing or shows some "new and significantly material line of cross-examination . . . was not explored in the prior examination" will we find a cross-examination was not adequate for confrontation purposes. *Id.* (internal quotations and citations omitted).

Here, we find Defendant had an effective opportunity to cross-examine Mathieson during the 491 Hearing. Mathieson was declared unavailable for trial, the parties were the same at the 491 Hearing and at trial, and the matters at issue in both cases were substantially identical in that both the 491 Hearing and trial involved the same allegations of Defendant's sexual contact with Victim. Defendant asserts no limitation was placed upon his opportunity to cross-examine Mathieson at the 491 Hearing. Defendant also directs this Court to no material line of inquiry regarding Mathieson not addressed at the 491 Hearing. We discern no meaningful difference in the purpose Defendant cites as his goal in his cross-examination of Mathieson at the 491 Hearing and the purpose he cites as his goal in a cross-examination of Mathieson at trial. Each of Defendant's cited purposes further a single objective: casting doubt on the credibility of Victim's disclosures.

"While a meaningful opportunity for cross-examination is necessary, 'the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *State v. Perry*, 275 S.W.3d 237, 244 (Mo. banc 2009) (quoting *United States v. Owens*, 484 U.S. 554,

557 (1988)). The appropriate test of admissibility "is the opportunity for full and complete cross-examination rather than the use which is made of that opportunity." *State v. Hicks*, 591 S.W.2d 184, 187 (Mo. App. S.D. 1979) (quoting *United States v. Allen*, 409 F.2d 611, 613 (10th Cir. 1969) and *State v. Logan*, 126 S.W.2d 256 (Mo. 1939)). Defendant conceded his cross-examination of Mathieson was "extensive." That Defendant's cross-examination of Mathieson is not what he wished it would be does not render his opportunity to cross-examine Mathieson at the 491 Hearing in violation of the Confrontation Clause. Therefore, the trial court correctly ruled Defendant had an opportunity to cross-examine Mathieson at the 491 Hearing.

We find Defendant's rights under the Confrontation Clause were not violated. However, if there had been a violation, the admission of Mathieson's 491 Hearing testimony was harmless. "Where the evidence of guilt is overwhelming and the prejudicial effect of the [witness's] statement is insignificant by comparison, the admission of the statement is but harmless error. . . . Likewise, where there is other evidence before the court which establishe[s] the same facts[,] no prejudice is shown." *State v. Neighbors*, 502 S.W.3d 745, 750 n.4 (Mo. App. W.D. 2016).

The State adduced overwhelming evidence, other than Mathieson's 491 Hearing testimony, to establish Victim was referred to the CAC for a forensic interview and Defendant touched Victim "for the purpose of gratifying [his] sexual desire." Both Victim's mother and the CAC forensic investigator testified Victim was referred to the CAC for a forensic interview. Similarly, Victim's mother testified regarding statements Victim made to her about each of the charged incidents of sexual contact and Victim's recorded interview with the CAC forensic investigator was admitted into evidence. Victim herself testified to four out of five of the charged incidents. The jury could have inferred Defendant's purpose of gratifying his sexual desire from any of these sources. Mathieson's testimony as to similar facts was, at most,

20

harmless error given the duplicative nature of her testimony and the other admissible testimony, which overwhelmingly supported the jury's finding of guilt.

Point I is denied.

Point II: Jury Instructions

In his second point, Defendant maintains the trial court plainly erred in submitting verdict directors, Instructions 9, 10, 11, and 12, on Counts III and IV because they failed to sufficiently differentiate between the acts of sexual contact the jury had to agree Defendant committed before finding him guilty of Counts III and IV.[9]  Thus, Defendant argues the verdict directors submitted failed to ensure the jury reached a unanimous verdict.  Defendant further argues the trial court failed to instruct the jury they could not convict him twice for a single act.

*Standard of Review*

Defendant concedes he failed to object to the verdict directors, Instructions 9, 10, 11, and 12, on Counts III and IV at trial.  Thus, we consider Defendant's claim of unpreserved error for plain error.  *Cornelious v. State*, 351 S.W.3d 36, 40 (Mo. App. W.D. 2011).  "Rule 30.20 authorizes this Court to review, in its discretion, 'plain errors affecting substantial rights . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.'"  *State v. Flores*, 437 S.W.3d 779, 789 (Mo. App. W.D. 2014).  Our review of a claim of plain error involves two steps.  *State v. Jennings*, 322 S.W.3d 598, 601 (Mo. App. S.D. 2010) (citing *State v. Garrison*, 276 S.W.3d 372, 374 (Mo. App. S.D. 2009)).  First, we consider whether plain error has occurred.  *Id.* (citing *Garrison*, 276 S.W.3d at 374).  Plain errors are "evident, obvious

---

[9] Defendant premises his claim of right to a unanimous jury verdict on both the Missouri and United States constitutions.  However, "the federal constitution does not require a unanimous verdict in state prosecutions."  *State v. Reagan*, 563 S.W.3d 182, 187 n.4 (Mo. App. E.D. 2018) (citing *State v. Celis-Garcia*, 344 S.W.3d 150, 155 (Mo. banc 2011)).  *See also Apodaca v. Oregon*, 406 U.S. 404, 406 (1972) (holding that a state court conviction by less than a unanimous jury does not violate a criminal defendant's Sixth Amendment right to trial by jury).  Therefore, we consider only Defendant's claim that his rights were violated under the Missouri Constitution.

and clear." *Id.* (quoting *Garrison*, 276 S.W.3d at 374). Second, if plain error is found, we determine whether a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id.* (citing *Garrison*, 276 S.W.3d at 374).

For instructional error to rise to the level of plain error, a defendant must show the trial court "so misdirected or failed to instruct the jury that the error affected the jury's verdict." *State v. Dorsey*, 318 S.W.3d 648, 652 (Mo. banc 2010) (internal quotations omitted). "Clear and obvious instructional error is rarely found to result in manifest injustice or a miscarriage of justice, requiring reversal for plain error." *State v. White*, 92 S.W.3d 183, 192 (Mo. App. W.D. 2002).

### *Analysis*

Under the Missouri Constitution, "the right of trial by jury as heretofore enjoyed shall remain inviolate." MO. CONST. art. I, sec. 22(a). "The Missouri Supreme Court has interpreted 'as heretofore enjoyed' to protect 'all the substantial incidents and consequences that pertain to the right to jury trial at common law,'" including a unanimous jury verdict. *State v. White*, 466 S.W.3d 682, 692 (Mo. App. E.D. 2015) (quoting *State v. Hadley*, 815 S.W.2d 422, 425 (Mo. banc 1991)). A unanimous jury verdict requires the jurors must substantially agree regarding the defendant's acts "as a preliminary step to determining guilt." *State v. Celis-Garcia*, 344 S.W.3d 150, 155 (Mo. banc 2011).

The verdict directors for Count III (Instructions 9 and 10) required the jury to find that "on or about during January 2017, in the County of St. Francois, State of Missouri, *at [Victim]'s house on an occasion they watched 'Lost'*, the [D]efendant touched the genitals of [Victim]." (emphasis added). The verdict directors for Count IV (Instructions 11 and 12) required the jury to find that "on or about during January 2017, in the County of St. Francois, State of Missouri, *at*

***[Victim]'s house on an occasion they watched 'Lost' and the Internet was sometimes down***, the [D]efendant touched the genitals of [Victim]." (emphasis added). Defendant argues these verdict directors failed to ensure the jury reached a unanimous verdict because they failed to sufficiently differentiate between the acts of sexual contact alleged. Defendant asserts that Instructions 9 and 10 were phrased too generally and allowed the jurors to find him guilty of the sexual contact more specifically described in Instructions 11 and 12. Defendant argues that, "[b]ecause the more specific conduct described in the Count IV verdict directors was wholly subsumed by the more general conduct recited in the Count III verdict directors, there was a substantial risk the jurors could base their convictions on different underlying acts."

To support his argument that his right to a unanimous jury verdict was violated, Defendant argues this is a "multiple acts" case, as was present in *Celis-Garcia*, 344 S.W.3d at 155-56.[10] Defendant misunderstands the circumstances that give rise to a multiple acts case. Defendant concedes that "[a] multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a *single count*." *State v. Henry*, 568 S.W.3d 464, 470 (Mo. App. E.D. 2019) (emphasis added) (quoting *Celis-Garcia*, 344 S.W.3d at 155-56)). However, Defendant also concedes he "was charged with five counts of misconduct."

Unlike *Celis-Garcia*, this is not a "multiple acts" case where Defendant was charged with several acts of sexual contact that occurred at different times and in different locations in a single count. Instead, this case is similar to *State v. Rachel*, 507 S.W.3d 81 (Mo. App. E.D. 2016). In

---

[10] In *Celis-Garcia*, the defendant was charged with one count of first-degree statutory sodomy against each of her minor daughters; however, the factual basis for each singular count included multiple instances of sexual intercourse. *Celis-Garcia*, 344 S.W.3d at 152. The Supreme Court of Missouri held the defendant's right to a unanimous jury verdict was violated because the verdict directors for the single counts failed to sufficiently differentiate between instances of sexual intercourse when the evidence showed multiple and discrete acts of sexual intercourse occurred at different times and in different locations. *Id.* at 158.

23

*Rachel*, this Court rejected a defendant's claim that certain verdict directors did not sufficiently differentiate between multiple sex acts underlying each count and, therefore, violated his right to a unanimous jury verdict where the defendant was charged with separate and distinct sex acts. *Id.* The defendant in *Rachel* was charged with three separate counts of first-degree statutory sodomy. *Id.* at 84. One count alleged hand-to-genital sodomy that occurred in the victim's bedroom, a second count alleged hand-to-genital sodomy that occurred in the victim's mother's bedroom, and a third count alleged mouth-to-genital sodomy that occurred in the victim's mother's bedroom. *Id.* at 87-88. The defendant argued the trial court plainly erred in submitting verdict directors for each of the three counts, claiming his case was a "multiple acts" case and the verdict directors "failed to sufficiently differentiate between the multiple sex acts underlying each count," as required by *Celis-Garcia*. *Id.* at 87-89. The trial court denied the defendant's claim, finding his case was not a "multiple acts" case, as "[t]here were three distinct incidents, separated into three different counts, distinguished by three different verdict directors." *Id.* at 89. Therefore, the trial court held the defendant's right to a unanimous jury verdict was not violated. *Id.*

Just as in *Rachel*, Defendant's case is not a "multiple acts" case, as there were two distinct incidents, separated into two counts, distinguished by four verdict directors. Victim said Defendant touched her vaginal area when she, Defendant, and her family watched *Lost* on the living-room couch at her residence. Victim said Defendant touched her vaginal area on another occasion when she, Defendant, and her family watched *Lost* on the living-room couch at her residence and, on this occasion, the Internet kept "skipping out." These acts described by Victim constitute the two incidents set forth in Counts III and IV and instructed upon in Instructions 9, 10, 11, and 12. Instructions 11 and 12 are distinguished from Instructions 9 and 10 through

adding the phrase "and the Internet was sometimes down." Therefore, Defendant's right to a unanimous verdict was not violated.

We further find the trial court appropriately instructed the jury through Instructions 16 and 17 that each of the five charged counts constituted a separate offense and must be considered separately. In Instruction 16, the jury was told: "The defendant is charged with a separate offense in each of the five counts submitted to you. Each count must be considered separately. You should return a separate verdict for each count and you can return only one verdict for each count." In Instruction 17, the jury was told: "Your verdict, whether guilty or not, must be agreed to by each juror" and "the verdict must be unanimous." Therefore, Defendant's assertions that the trial court did not instruct the jury they could not convict him twice for a single act are refuted by the record.

Because we find the trial court did not plainly err in submitting the verdict directors Defendant challenges, we do not reach the second step of determining if manifest injustice or a miscarriage of justice resulted. *Jennings*, 322 S.W.3d at 601 (citing *Garrison*, 276 S.W.3d at 374).

Point II is denied.

### Conclusion

The trial court's judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Kurt S. Odenwald, J. and
Lisa P. Page, J. concur.

25